## 60069. BRESS v. KEEP-SAFE INDUSTRIES, INC.

McMurray, Presiding Judge.

On March 24, 1974, Leon N. Bress entered into a contract with Armor Life Safety Systems, Inc., for the purchase and installation of a home security system. As installed, the system included a number of heat and smoke detectors and control devices such as "Control Box," "Arming Station Key," "Electronic Siren," and "Automatic Dialer." Included in the installation cost was "a complete Maintenance Agreement, covering all parts and labor for a period of one year from date of installation. This Agreement includes an annual routine check of all equipment, and answering all service calls at the above address. This Maintenance Agreement is renewable annually at buyer's option for the sum of . . . ," with the figure $120 stricken through and "1st yr. 60 per-phone call" added to the agreement. Following installation and for the next three years Armor Life Safety Systems, Inc., provided the contemplated maintenance service as shown by various payments made to it by check by Mr. Bress.

On February 2, 1977, Armor Life Safety Systems, Inc., was sold to Keep-Safe Industries, Inc., a subsidiary corporation of Ackerman & Co., and this information was supplied to the customers by Armor's president, Burton Kolker, who became vice-president of Keep-Safe. Mr. Bress was also notified by the president of Keep-Safe that it would be "now providing the monitoring of and service for your security system." As part of the acquisition, Keep-Safe notified all clients as follows: "All existing terms, warranties, conditions and/or stipulations of existing Armor contracts and clients are now assigned to, and assumed by Keep-Safe Industries, Inc., and shall remain in effect." Thereafter, Keep-Safe provided identical service formerly provided by Armor.

But in November, 1978, and April, 1979, Keep-Safe wrote to Mr. Bress contending they had erroneously been providing additional service not called for in the contract, such as "monitoring of your alarm signals and the dispatch of the appropriate authorities," which would cease April 30, 1979. A discussion then began between Keep-Safe and Mr. Bress as to what the installation contract provided and for how much. Keep-Safe sought to obtain another contract as to monitoring and maintenance of the system installed by Armor for Mr. Bress and advised by registered letter that if he did not want to sign the new contract for the providing of monitoring service but did want to continue the maintenance provision of the Armor contract and "at the $90.00 semi annual charge, please communicate this in writing to our office no later than December 15, 1978. No

communication from you by this date will serve as notice to this company of your intent to terminate all services." The new alarm system agreement also provided for monitoring and maintenance of the system for the sum of $90 semi-annually. Keep-Safe had apparently submitted to plaintiff an "Alarm Service Agreement" dated "1st day of Dec. 1977" which apparently was not accepted by plaintiff wherein, for a $90 semi-annual payment, first payment due on May 1, 1978, Keep-Safe would provide service for "Burglar Alarm Monitoring," "Fire Alarm Monitoring," "Hold Up Alarm Monitoring," and "Maintenance" of subscriber's alarm system.

On August 22, 1979, Leon N. Bress sued Keep-Safe Industries, Inc., for damages for breach of contract, contending that the defendant notified plaintiff it would no longer honor the terms and conditions of the agreement, plaintiff had tendered the required annual payment of $60 and made written demand upon defendant that it continue to provide the maintenance and monitoring service formerly provided by its predecessor in accordance with the written agreement in which its predecessor had agreed to do so and sought damages in the sum of $4,500, seeking also reasonable attorney fees by reason of the bad faith and the stubbornly litigious manner in which defendant has acted in causing plaintiff unnecessary trouble and expense.

The defendant answered, denying the complaint, admitting only that Armor Life Safety Systems, Inc., had installed a life safety system for the plaintiff and provided for maintenance pursuant to the terms of a written agreement but denied that the agreement provided monitoring services. It also admitted that it had purchased the assets of Armor and assumed the terms and conditions of the written agreement. Defendant also contended that the plaintiff had breached the contract by failing to make payment of all installments due for maintenance.

After discovery defendant moved for summary judgment, contending the installation contract did not require the defendant to provide maintenance and monitoring service to the plaintiff in exchange for an annual payment of $60 and that a construction of said contract would show the contention of the plaintiff is unsupported by the clear and unambiguous language of the contract. Summary judgment was granted in favor of the defendant against the plaintiff, and the complaint was dismissed. Plaintiff appeals. *Held:*

1. As a general rule the construction of a contract is a question of law for the court where the language of a contract is clear and unambiguous and capable of only one reasonable interpretation as applied to the subject matter, but if any matter of fact is involved, such as the proper reading of an obscurely written word, the "jury

should find the fact." Code § 20-701. See *Delong v. Cobb,* 215 Ga. 500, 504 (111 SE2d 89); *H. R. Kaminsky & Sons v. Smithwick Const. Co.,* 147 Ga. App. 147 (248 SE2d 211); *Holcomb v. Word,* 239 Ga. 847 (238 SE2d 915); *Krupp v. Taylor Enterprises,* 148 Ga. App. 440, 442 (3) (251 SE2d 364).

It is also well settled that in construing a contract the entire writing is to be taken into consideration in ascertaining the meaning of the language employed and the intent of the parties. *Collier v. Akins,* 102 Ga. App. 274, 277 (116 SE2d 121); *Cummings v. Cummings,* 89 Ga. App. 529, 532 (80 SE2d 204). Further, in interpreting a contract, it is well recognized that all attendant and surrounding circumstances should be considered. *Dorsey v. Clements,* 202 Ga. 820, 821-822 (44 SE2d 783); *Tarbutton v. Duggan,* 45 Ga. App. 31 (4) (163 SE 298). It is also recognized that the construction placed upon a contract by the parties themselves, as shown by the acts and conduct, is entitled to much weight and may be conclusive upon them. *Copenhaver v. United American Investment Co.,* 96 Ga. App. 562, 566 (101 SE2d 203).

Consequently, we have for decision here in interpreting the contract involving installation of a life safety system, including equipment for monitoring, the issue whether the maintenance agreement which provided and included "an annual routine check of all equipment, and answering all service calls at the above address," included monitoring the system for the sum set forth therein. The plaintiff's contention is that it does. The defendant's contention is that it does not but merely provides for maintenance of the system and that the monitoring of the system has been gratis on its part by reason of a mistake of fact and that it is indeed entitled to seek a new contract for maintenance and monitoring. However, regardless of whether or not this maintenance agreement included monitoring at the time it was made in March, 1974, as thereafter provided for several years, the contract is indeed ambiguous as to the maintenance agreement and the terms of payment which is "renewable annually at buyer's option for the sum of . . ." showing the stricken amount as written into the blank and language added which appears to be "after 1st yr., per year. 1st yr. 60 per-phone call 3/23/74 8_20_ pm.," followed by initials.

2. As we have held above, the contract is indeed ambiguous as to the intention of the parties as to what was involved in the "Maintenance Agreement," as well as the charge for same which indeed will require jury consideration as to the intention of the parties by reason of the ambiguous writing. A jury may determine an amount stated therein applied only to the first year. *Wisenbaker & Co. v. West Yellow Pine Co.,* 16 Ga. App. 699 (2) (86 SE 46);

*Crestlawn Memorial Park v. Scott,* 146 Ga. App. 715, 717 (247 SE2d 175). Nevertheless, an issue of material fact remains, and the trial court erred in granting summary judgment in favor of the defendant. See *Lansky v. Goldstein,* 136 Ga. App. 607 (1) (222 SE2d 62); *Ham v. Ham,* 230 Ga. 43, 45 (195 SE2d 429); *Holland v. Sanfax Corporation,* 106 Ga. App. 1 (126 SE2d 442).

*Judgment reversed. Smith and Banke, JJ., concur.*

ARGUED JUNE 6, 1980 — DECIDED SEPTEMBER 4, 1980.

*C. Sammy Thomas, William B. Collyer, Jr., John V. Burch,* for appellant.

*James A. Gober,* for appellee.