## A98A1573. GILL v. B & R INTERNATIONAL, INC.
### (507 SE2d 477)

JOHNSON, Presiding Judge.

Gregg Gill sued his former employer B & R International, Inc., alleging that B & R breached an agreement to pay a debt and breached an agreement to provide him severance pay. Gill sought specific performance of the alleged contract, litigation expenses and reasonable attorney fees. The trial court granted B & R's motion for summary judgment and dismissed Gill's complaint with prejudice. From this judgment Gill appeals. We find no error and affirm.

1. The trial court did not err in granting summary judgment to B & R on Gill's claim for breach of an agreement to pay a debt. Gill contends that B & R offered him and certain other employees an opportunity to either purchase B & R stock at a favorable price or to receive a lump sum payment of $100,000. Gill also contends that the lump sum payment was to be compensation from B & R for his continued employment with the company and for his contribution to corporate growth and success. According to Gill, the lump sum payment was conditioned upon the employee's continued employment with B & R until B & R was sold or until the employee was terminated, so long as the termination was neither voluntary nor for cause.

Gill acknowledges that he was the only employee to accept the $100,000 lump sum payment offer from B & R; other employees elected to buy the stock. The offered stock was not owned by the cor-

poration but by Robbie Reid, B & R's president, CEO, and majority stockholder. In his affidavit, Gill states it was his "understanding" that the offer was made by Reid in his corporate capacity. However, Gill cannot recall whether B & R was going to issue additional stock or whether stock would be purchased directly from Reid. In his deposition, Gill admits that he does not know whether the $100,000 was to be paid by B & R or by Reid. B & R asserts that: (i) any offers were made by Reid in his personal capacity; (ii) although Reid initially suggested a lump sum payment alternative, this alternative was not offered again after each of the four employees stated an initial desire to purchase stock; and (iii) B & R did not accept any counteroffer from Gill binding it to pay him a $100,000 lump sum.

To establish his contentions, Gill substantially relies on an unsigned memorandum, dated February 22, 1993, and the response to that memorandum. The memorandum was written by Reid and addressed to Gill and three other employees; it is not written on corporate letterhead. The memorandum pertinently states: "Attached is a Shareholder's Agreement for your review and comments. The amounts shown are the final amounts being offered for their respective values. I have reviewed this and feel this agreement to be not only equitable, but very simple. . . . My alternative offer is to give each of you a Promissory Note equal to the dollars I have earlier indicated that would become due and payable upon the sale of the company. If the company [is] never sold, or if you were terminated for cause or left at your own discretion, then there would be no value payment. This is strictly a value not tied to a percentage value by company. I would like to have your comments on the Shareholder's Agreement before Wednesday . . . and whether or not you intend to become a shareholder on terms offered." Gill stated in his response: "Given my current financial obligations, the appropriate option at this time is the $100,000 promissory note. If the stock option can remain open (Feb 22 memo), I would like to consider it at a future date." Reid made this handwritten notation on Gill's response: "I *respect* your decision — no problem — It is not fair to leave stock option open for you & not for others — We can discuss stock [at] a future date & a different price — Robbie." It is clear from the record before us that no promissory note was ever executed or delivered to Gill by either Reid or B & R. Gill contends that genuine issues of material fact exist as to whether B & R was a party to the contract and whether there was a breach of an alleged agreement to pay the lump sum.

(a) Gill argues that ambiguity exists as to the identity of the parties, consideration and terms of the agreement. He cites the holding in *Nolley v. Maryland Cas. Ins. Co.*, 222 Ga. App. 901, 903 (3) (476 SE2d 622) (1996), where we stated that the construction of a contract

is a question of law for the trial court when the contract language is clear and capable of only one reasonable interpretation, but that if any matter of fact is involved, the jury should find the fact. The holding in *Nolley* is based on a direct quote from *Bress v. Keep-Safe Indus.*, 155 Ga. App. 544, 545 (271 SE2d 867) (1980). However, in *U. S. Enterprises v. Mikado Custom Tailors*, 250 Ga. 415, 416 (297 SE2d 290) (1982), the Supreme Court explained the correct interpretation to be given the legal principle set forth in *Bress* and related cases as follows: "No jury question is raised unless after application of the pertinent rules of construction the ambiguity remains. Only if after applying these rules of construction it is unclear which of two or more possible meanings represents the true intent of the parties should the issue be declared ambiguous and delivered to the jury." (Citations omitted.)

In construing oral and written contracts, the court should apply the appropriate three-step process of contract construction discussed in *Duffett v. E & W Prop.*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993). *Jones v. Destiny Indus.*, 226 Ga. App. 6 (2) (485 SE2d 225) (1997). First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Thus, where the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent. Second, if the potential for ambiguity appears, the existence or non-existence of an ambiguity is itself a question of law for the court, unless an ambiguity remains even after the court has applied the pertinent rules of contract construction. Finally, issues of contract construction will be submitted to the jury only when there appears to be an ambiguity in the contract which cannot be resolved by the court's application of the statutory rules of construction. *Duffett*, supra; see *U. S. Enterprises*, supra.

In ruling on a motion for summary judgment, the opposing party must be given the benefit of all reasonable doubt, and the court must construe the evidence and all inferences and conclusions arising therefrom most favorably to the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). However, "rules of contract construction and interpretation are separate from those rules allocating burdens of proof at trial and on motion for summary judgment," and thus are to be independently applied. *Thomas v. American Global Ins. Co.*, 229 Ga. App. 107 (1) (493 SE2d 12) (1997); *Richard Haney Ford v. Ford &c. Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282) (1997).

(b) Examining the record, we find that the trial court, utilizing pertinent rules of contract construction, could conclude that no enforceable contract existed to pay Gill a lump sum for either of the following reasons: The trial court could have found there was no

meeting of the minds or assent as to the identity of the parties to the contract. The court could have legitimately concluded that while it was Gill's intent to enter into a contract with B & R, it was Reid's intent only to enter into a contract in his personal capacity. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. Each of these essential terms must be certain. *Laverson v. Macon Bibb County Hosp. Auth.*, 226 Ga. App. 761, 762 (487 SE2d 621) (1997). The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where time and place are essential. Id.

The trial court also could have concluded there was no mutual assent by the parties because Gill responded with a counteroffer to Reid's offer of stock or lump sum payment. That is, the trial court could have found that Gill counteroffered that he be allowed to immediately accept lump sum payment and also that the stock option remain open indefinitely so that he could elect whether to purchase it at the offered price at some future date, which counteroffer Reid unequivocally rejected. A subsequent communication by one party to the alleged contract that varies even one term of the original contract is a counteroffer; a counteroffer rejects an offer and terminates the offeree's power of acceptance. *Lamb v. Decatur Fed. Sav. &c. Assn.*, 201 Ga. App. 583, 585 (411 SE2d 527) (1991).

Either of these interpretations of the alleged contract by the trial court would cause Gill's claim to fail. Thus, the trial court did not err as contended. A grant of summary judgment must be affirmed if it is right for any reason. See *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (3) (446 SE2d 741) (1994).

(c) The trial court's order expressly refers to a motion hearing and states that the court "considered the full record and all submissions and arguments of counsel," in determining that B & R was entitled to summary judgment. However, no hearing transcript has been included in the record on appeal and Gill has posed no objection to this Court regarding its omission. Without access to the hearing transcript, we cannot determine whether evidentiary submissions, stipulations, or statements in place by counsel were tendered at the hearing. Without this knowledge, we cannot adequately address any of the issues which Gill asserts on appeal. The burden is on an appellant to show error by the record, and when a portion of the record which is necessary for our determination of one or more appellate issues is not before the court, the trial court's express or implicit ruling as to those issues must be affirmed. *Atlanta Cas. Ins. Co. v. Crews*, 197 Ga. App. 48, 51 (3) (397 SE2d 466) (1990). For this addi-

tional reason, the grant of summary judgment by the trial court must be sustained.

2. The trial court did not err in granting summary judgment to B & R as to Gill's severance pay claim.

In his affidavit, Gill made the following statements surrounding B & R's alleged promise to provide him severance pay: In April 1996, Reid terminated Gill's employment because the company had been sold to Poe & Brown, Inc. and that company decided not to hire Gill. At that meeting, Reid acknowledged that Gill was owed a "lump sum" of money and further stated that Gill would receive severance payments of $3,500 twice a month for four months. Reid also said that payments would be made only if Gill did not solicit any B & R accounts after his termination. B & R made one payment and then stopped payments on the ground that Gill had solicited B & R accounts.

In his deposition testimony, Gill unequivocally responded "[n]o" when asked, "[n]ow, in connection with your receipt of severance, did you agree to do anything in exchange for the severance." Thus, a contradiction exists as to Gill's affidavit statement that the severance pay was given on condition that he not solicit B & R customers.

A promise unsupported by adequate consideration is unenforceable. OCGA § 13-3-40. Gill has given two directly contradictory statements bearing on the question whether he bargained for and gave any consideration in exchange for the payment of severance benefits. In *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), it was held that in summary judgment cases, a party's self-contradictory testimony is to be construed against him unless he offers a reasonable explanation for the contradiction. After applying the rule announced in *Prophecy* and construing the remaining evidence in the light most favorable to Gill, we conclude the trial court did not err in granting B & R's motion for summary judgment as to the severance pay claim. The alleged severance pay agreement was, at most, gratuitous. A grant of summary judgment must be affirmed if it is right for any reason. See *Hanna*, supra.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 25, 1998.

*Goodman & Associates, James E. Goodman, Norman L. Smith*, for appellant.

*Porter & Barrett, J. Alexander Porter, Davis & Doster, Simuel F. Doster, Jr.,* for appellee.