## A04A0970. TRANSOUTH FINANCIAL CORPORATION v. ROOKS.

### (604 SE2d 562)

MILLER, Judge.

After Angela Rooks sued TranSouth Financial Corporation (Tran-South) for, among other things, breach of contract, TranSouth filed a motion to compel arbitration. In denying the motion to compel, the trial court determined that the controlling agreement did not contain an arbitration provision. After following the interlocutory appeal procedures, TranSouth challenges that determination. After review, we find no error and affirm.

In November 1999 Rooks executed an automobile financing loan agreement with Auto Group, Inc. for a 1997 Toyota Corolla. Auto Group subsequently assigned that loan agreement to TranSouth. After her Toyota Corolla was repossessed in April 2003, Rooks sued TranSouth for wrongful repossession, violation of the Fair Business Practices Act, attorney fees, and punitive damages. Rooks claimed that on March 10, 2003, she and TranSouth executed an amendment agreement, and that by repossessing her car, TranSouth violated the terms and conditions of that agreement.

In answering Rooks's complaint, TranSouth denied having any contractual relationship with Rooks and also denied executing the amendment agreement which contains the arbitration provision. Simultaneously, however, TranSouth asserted that "Plaintiff's claims are subject to a valid, binding arbitration agreement." Invoking the amendment agreement, TranSouth twice demanded that Rooks dismiss her lawsuit and proceed in arbitration. In lieu of responding to Rooks's discovery, TranSouth filed a motion to compel arbitration.

In support of its motion to compel, TranSouth submitted the affidavit of Cassandra Jones, a collections manager with TranSouth, who attested to having personal knowledge of Rooks's account. Jones testified that in February 2003, Rooks had applied for a hardship amendment to the loan agreement "because she was having a difficult time making her monthly payments." Jones testified: "I personally dealt with [Rooks] regarding that amendment agreement. That amendment, had it become effective, would have reduced the amount of her monthly payments and extended the term of the loan." She added:

> TranSouth was unable to accommodate [Rooks's] request for
> an amendment agreement because TranSouth discovered
> that [Rooks's] sole source of income was unemployment
> benefits that were about to expire. Accordingly, that amend-

ment agreement was never approved by anyone at Tran-South with authority to do so, and the amendment agreement never became effective.

Notwithstanding that testimony, Jones then quoted the arbitration provisions at length from the amendment agreement, the same document that she testified had not been properly approved and the same document that TranSouth denied executing.[1] The arbitration provision at issue states in part:

> Any claim or dispute, except as provided below, whether in contract, tort or otherwise (including, without limitation, interpretation and the scope of this provision, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this contract or note) between you and us or our employees, agents, successors or assigns which arise out of or relate to this contract . . . shall, at your or our election . . . be resolved by neutral, binding arbitration and not by court action.

In opposing TranSouth's motion to compel arbitration, Rooks argued that since TranSouth drafted the contract, any ambiguities had to be construed against TranSouth. In her own affidavit, Rooks testified that the entire agreement "consisted of only one page when I signed it and discussed it with Ms. Baker of TranSouth."[2] She denied that a second page was attached to or part of the agreement that she signed. Rooks also claimed that TranSouth was attempting "to rely on the provisions of a non-existent agreement."

The trial court determined that the amendment agreement did not contain an arbitration provision. The trial court also found that the amendment was never approved by TranSouth and never became effective. In denying TranSouth's motion to compel arbitration, the trial court noted the irony that "[TranSouth], on the one hand, finds

---

[1] In Paragraph 5 of her complaint, Rooks alleged that "[o]n March 10, 2003, plaintiff and defendant through its agent, employee, or representative, Ms. Baker, entered into an agreement, a true and accurate copy of which is attached hereto as Exhibit 'A.'" TranSouth responded by saying, "TranSouth denies the allegations set forth in Paragraph 5 of Plaintiff's Complaint." In other responses, TranSouth denied that Baker was an agent, employee, or representative of TranSouth or was authorized to act on its behalf.

[2] Paragraph seven on page one reads: "THIS AMENDMENT AGREEMENT CONTAINS AN ARBITRATION PROVISION WHICH SIGNIFICANTLY AFFECTS YOUR RIGHTS IN ANY CLAIM OR DISPUTE WITH US. PLEASE READ THE ARBITRATION PROVISION ON PAGE 2."

it appropriate to rely on the ineffectiveness of the amendment, but, on the other, urges enforcement of the arbitration clause contained therein."

1. TranSouth contends that the trial court erred in denying its motion to compel arbitration "given that Rooks asserts in this lawsuit that the amendment agreement, which contains the arbitration provision, is binding and enforceable." TranSouth argues that Rooks should not be permitted to insist upon the validity of the contract "while at the same time denying the enforceability of the arbitration provision in that contract." TranSouth also asserts that the arbitration provisions in the amendment agreement explicitly provide for the arbitration of any dispute "relating to the consummation . . . or enforcement of this contract."

On appeal, this Court considers questions of law de novo. *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002). Absent any issue of fact, the construction of a contract is a question of law for the court. OCGA § 13-2-1.

Here, the threshold issue is not the enforceability of the arbitration provision, as TranSouth contends, but the existence of an enforceable contractual provision that requires arbitration. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. Unless and until there is a meeting of the minds as to all essential terms, a contract is not complete and enforceable. *Clark v. Schwartz*, 210 Ga. App. 678, 679 (436 SE2d 759) (1993).

Neither side controverts the fact that the original loan agreement between Rooks and Auto Group constituted a valid and enforceable contract. However, that agreement, which was assigned to TranSouth, did not include an arbitration provision, a fact that TranSouth concedes in its reply brief.

Essentially, Rooks claims that the amendment agreement is an enforceable contract but only as to page one of that agreement so that she can establish that she was not delinquent in her payments and that TranSouth wrongfully repossessed her vehicle. TranSouth, on the other hand, seeks to enforce the arbitration provision that appears on page two of the amended agreement, the same document that TranSouth denies executing. Thus, the dispositive question is whether the parties did, in fact, execute the amendment agreement and thereby enter into a binding and enforceable contract that altered the terms of the original contract. See *Mayer v. Turner*, 142 Ga. App. 63, 64 (1) (234 SE2d 853) (1977) (a novation is itself a contract and must have all the essential elements of a de novo contract).

While it appears that someone named "Baker" signed the amendment agreement on behalf of TranSouth and that Rooks signed on her own behalf, this agreement is fatally defective for two reasons. First, its first page inexplicably incorporates by reference a contract having a date different from the one signed by Rooks in November 1999. Specifically, the amendment agreement purports to modify the terms "relating to a Motor Vehicle Retail Installment Sale Contract or promissory note and security agreement dated August 16, 2000, and having account number . . . (the 'Contract')." The only contract in the record concerning the Toyota Corolla at issue, however, is the "RETAIL INSTALLMENT CONTRACT & SECURITY AGREEMENT" dated November 30, 1999, entered into by Rooks and Auto Group. By thus purporting to alter the terms of another contract whose existence has not been shown, the amendment agreement fails to show a meeting of the minds as to all essential terms. See *Gill v. B & R Intl.*, 234 Ga. App. 528, 530-531 (1) (b) (507 SE2d 477) (1998).

The face of page two reveals yet another defect. This page consists of five paragraphs relating to arbitration and the choice of arbitrators. The final sentence at the bottom of page two ends: "IN WITNESS WHEREOF, the parties hereto agree to the terms of this Amendment Agreement." But the signature blocks directly below that text are blank, indicating that neither TranSouth nor Rooks signed the entire document.

One seeking to enforce a contract must bear the burden of proof as to all the essential elements of the contract, including the assent to the contractual terms. *Associated Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 491 (2) (37 SE2d 393) (1946). "No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced." (Citations and punctuation omitted.) *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992). Since no evidence shows that the parties executed the entire document and no evidence shows that the parties agreed to all essential terms in the proposed amendment, it is not an enforceable contract. See *Gill*, supra, 234 Ga. App. at 531 (b). Accordingly, none of the so-called terms of the "amendment agreement" are enforceable, including the arbitration provision. See id.

2. TranSouth asserts that the trial court erred by failing to afford the arbitration agreement the presumption of enforceability to which it is entitled under the Federal Arbitration Act. Since TranSouth failed to establish the existence of an enforceable contract that contained an arbitration provision, this argument fails as a matter of law. See *Pope Lumber Co.*, supra, 200 Ga. at 491.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 30, 2004.

Troutman Sanders, Alan W. Loeffler, Bryony H. Bowers, for appellant.

Harper, Waldon & Craig, John B. Craig, for appellee.