**March 15, 2019**

# In the Court of Appeals of Georgia

A18A1926. STACY AARON ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF EDITHA AARON v. UNITED HEALTH SERVICES OF GEORGIA, INC., et al.

COOMER, Judge.

In this interlocutory appeal, we decide whether a binding arbitration agreement exists if one party does not sign the agreement. Stacy Aaron, on behalf of Editha Aaron's wrongful-death beneficiaries, appeals the trial court's order staying his lawsuit against the entities running the nursing home that he alleges harmed his mother and compelling arbitration.[1] For the reasons that follow, we affirm.

---

[1] The Appellees in this case are United Health Services of Georgia, Inc., UHS-Pruitt Holdings, Inc., PruittHealth, Inc., PruittHealth Care Management, Inc., PruittHealth-Property Management, LLC, PruittHealth Consulting Services, Inc., PruittHealth Therapy Services, Inc., PruittHealth-Savannah, LLC, and Randy West, NHA. For simplicity, we call them, collectively, "PruittHealth."

On appeal from the grant or denial of a motion to compel arbitration, the standard of review is "whether the trial court was correct as a matter of law." *Tillman Park, LLC v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. 27, 29–30 (679 SE2d 67) (2009) (citation and punctuation omitted). "[T]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." *Id* at 30 (footnote omitted).

The record here shows that in October 2014, Editha was admitted to a PruittHealth nursing home in Savannah.[2] Prior to her admission, Editha gave her son Stacy power of attorney. He signed an admission agreement on his mother's behalf, which was also signed by a PruittHealth representative. The admission agreement contained no arbitration clause and did not refer to a separate arbitration agreement.

Separate from this fully executed admission agreement is a partially executed arbitration agreement (the "Agreement"). The Agreement lists the parties as "UniHealth PAC Savannah, LLC," and "Editha . . . and B Aaron," even though "B Aaron" is not Editha's representative and did not sign the Agreement. Although the pre-printed portion of the Agreement says that it was 'made and entered into" on

---

[2] The decedent's name appears as "Edith" and "Editha" in the record. We refer to her as Editha.

2

October 23, Stacy did not sign it until the next day. The Agreement provides that a signature binds Editha and anyone entitled to sue because of her death. No representative of PruittHealth signed the Agreement, even though the Agreement contains a signature block for a PruittHealth representative to sign. Both the admission and the arbitration agreements were prepared by PruittHealth and presented to Editha during her admission process at PruittHealth's facility. PruittHealth maintained the partially executed Agreement in its records.

Editha passed away within weeks of her discharge from the nursing home. Stacy sued PruittHealth on behalf of her wrongful death beneficiaries for negligence, violations of the bill of rights for residents of long-term care facilities, medical malpractice, fraud, and wrongful death. PruittHealth answered the lawsuit and also separately moved to compel arbitration. The trial court granted the motion, holding that the parties had mutually assented to the Agreement. The trial court reasoned that PruittHealth need not sign the Agreement because its act of entering the "exact date the agreement was signed" and "other specific language" about the parties indicated its assent to the Agreement. The trial court certified the order for immediate review, and we granted Stacy's application for interlocutory appeal.

In a single enumeration of error, Stacy argues that the trial court erred by holding that the parties had mutually assented to arbitrate. We disagree.

"Whether there is a valid agreement to arbitrate is generally governed by state law principles of contract formation…." *Triad Health Mgmt. of Georgia, III, LLC v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009). Under Georgia law, a written, unsigned contract can be enforceable if the parties mutually assent to its terms. *Cochran v. Eason*, 227 Ga. 316, 318 (1) (180 SE2d 702) (1971); *Silvey v. Wynn*, 102 Ga. App. 283, 283 (1) (115 SE2d 774) (1960); *Comvest, LLC v. Corporate Securities Group, Inc.*, 234 Ga. App. 277, 280-281 (3) (507 SE2d 21) (1998).

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

4

*Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982) (citations omitted).

The record before us supports the conclusion that the parties mutually agreed to arbitrate these claims. First, Stacy signed the Agreement and initialed each page, indicating his intent to be bound by it. *See Bostwick Banking Co. v. Arnold*, 227 Ga. 18, 23 (178 SE2d 890) (1970) ("A court may take judicial notice that the signature of an individual on the face of a note . . . is the universal method of signing a contract to assume a personal obligation." (citation omitted)).

As to PruittHealth, it drafted the Agreement, presented it to Stacy for approval, and retained it in its records after Stacy demonstrated assent to the terms. PruittHealth also filled in the date of intended execution and specifically tailored the contract language to the parties. *See Turner Broadcasting System, Inc. v. McDavid*, 303 Ga. App. 593, 597 (1) (693 SE2d 873) (2010) ("[I]n cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement." (citations omitted)). Moreover, PruittHealth has expressly stated in its pleadings its intention to be bound by the Agreement.

In addition to strong evidence that both parties mutually assented to the Agreement at the time of the patient's admission, PruittHealth sought to enforce the Agreement at its first available opportunity. *See Burson v. Milton Hall Surgical Assocs., LLC*, 343 Ga. App. 159, 167 (2) (806 SE2d 239) (2017). On the same day it filed its answer, PruittHealth also filed a motion to dismiss, or alternatively, a motion to compel arbitration. *See Weyant v. MacIntyre,* 211 Ga. App. 281, 283-284 (3) (438 SE2d 640) (1993) (arbitration required where party made known his intention to rely upon the arbitration clause, and, after action was filed, asserted the arbitration clause in his answer and promptly moved to compel arbitration). *Cf. Tillman Group, Inc. v. Keith*, 201 Ga. App. 680, 681 (2) (411 SE2d 794) (1991) (By "litigating the merits of the appellees' claim . . . without filing a motion [to compel arbitration] or otherwise seeking to initiate arbitration proceedings, the appellant waived its right to insist upon arbitration."); *Nat. Parents' Resource Institute for Drug Education, Inc. v. Peachtree Hotel Co.*, 201 Ga. App. 637, 638 (2) (411 SE2d 884) (1991).

Because the parties mutually assented to the Agreement, and PruittHealth sought to enforce the Agreement as early as practicable, we find that the Agreement is enforceable. Thus, Stacy may not unilaterally rescind the Agreement by filing a claim in lieu of arbitration simply because PruittHealth failed to sign it. *See Taylor*

*v. Taylor*, 217 Ga. 20, 23 (2) (120 SE2d 874) (1961) (Where a party accepted a paper and retained it in his possession, "he assented to its terms as freely as if he had affixed his signature to the same." (citations omitted)).

Accordingly, we agree with the trial court that the circumstances demonstrate that the parties intended to form and, in fact, formed a binding contract to arbitrate claims arising between them.

*Judgment affirmed. Gobeil, J., concurs. Hodges, J., dissents.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

# In the Court of Appeals of Georgia

A18A1926. STACY AARON ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF EDITHA AARON v. UNITED
HEALTH SERVICES OF GEORGIA, INC. et al.

HODGES, Judge, dissenting.

The majority's holding permits a nursing home to deprive a party of his day in court despite the absence of an enforceable arbitration agreement. Consequently, I respectfully dissent.

As the party seeking to compel arbitration, PruittHealth must "prov[e] the existence of a valid and enforceable agreement to arbitrate," which "is generally governed by state law principles of contract formation." (Citation omitted.) *United Health Svcs. of Ga. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017). For over a century, Georgia courts have held that if a contract calls for signatures, it is not complete unless signed. See, e.g., *Clarke Bros. v. McNatt*, 132 Ga. 610, 614 (64 SE2d 795) (1909) ("If a contract is intended to be signed by both parties, and so appears on its face, it is not complete until thus signed.") (citation omitted); *MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 84 (2) (a) (761 SE2d 500) (2014) ("A contract that is

intended to be signed by both parties, and so appears on its face, is complete when thus signed.").[1]

Under *Clark Brothers* and *MAPEI Corp.*, the Agreement is incomplete because it calls for signatures, and PruittHealth never signed it. The Agreement contains a signature block for PruittHealth, which PruittHealth did not sign. It also contains a checklist directing PruittHealth to "[s]ecure appropriate signatures" and to "[h]ave . . . two (2) healthcare center/agency witnesses execute the contract." PruittHealth did neither of those things. The Agreement even misidentifies the person signing on behalf of Editha Aaron.

The Agreement is unenforceable because it lacks mutual assent. Mutual assent is an element of any valid contract, and a contract lacking mutual assent is unenforceable. OCGA § 13-3-1; *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004). Due to PruittHealth's failure to execute the

---

[1] See also *Turnipseed v. Jaje*, 267 Ga. 320, 324 (2) (b) (1996) (holding that a sales contract signed by only one of three owners is incomplete); *MacDonald v. Whipple*, 273 Ga. App. 409, 410 (1) (615 SE2d 150) (2005) (holding that a contract that is not signed by the proper party is "incomplete and unenforceable as a matter of law"); *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004) (holding an arbitration clause unenforceable for lack of signatures); *Paradies Shops, Inc. v. First American Commercial Bancorp, Inc.*, No. 1:05-CV-00490-JEC, 2005 WL 8155217, at *2 (N.D. Ga. Nov. 21, 2005) (denying motion to compel arbitration, noting that "[n]o signature usually means no agreement.").

Agreement, and Stacy's revocation of his assent on behalf of Editha Aaron, as indicated by the filing of a lawsuit, the Agreement was unenforceable when PruittHealth sought to compel arbitration. By then, there was nothing for PruittHealth to assent to and thus no meeting of the minds. See *Graham v. HHC St. Simons, Inc.*, 322 Ga. App. 693, 697 (2) (746 SE2d 157) (2013) ("[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time . . . .").

The majority misses the point by arguing that PruittHealth "sought to enforce the Agreement at its first available opportunity." By the time PruittHealth attempted to enforce the Agreement, it was too late. Partial performance of a contract to which the other party has already withdrawn assent cannot revive an unenforceable agreement.

Because the majority enforces an unenforceable arbitration agreement, I respectfully dissent.