**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A2363. HUDSON v. GODOWNS et al.

BARNES, Presiding Judge.

Following a bench trial, Brenda M. Hudson appeals the final order and judgment in this boundary line and trespass case. She contends that the trial court erred in finding an ambiguity in the parties' initial settlement agreement, that the court's order accepting the agreement was final and could not be modified outside that term of court in which it had been entered, and that the court erred in its factual determination of where the boundary line was located. For the reasons that follow, we affirm the order.

Hudson filed a complaint against neighboring property owners Ricky Godowns and Belinda Sheram (collectively, "Godowns"), seeking an injunction and to have the boundary line between the properties established. She contended that Godowns had

trespassed on her land and removed timber, for which she sought damages, and had been stubbornly litigious. After Godowns was served, the parties appeared in court for a hearing on the injunction and reached an apparent agreement, stipulating certain facts in open court that were reduced to a written order (the "Stipulated Order"). The parties agreed that the boundary line between their properties was as depicted on a certain plat, and Godowns renounced any claim to land south of the line "with bearing of N 69 degrees 07 minutes 05 seconds E on the plat." The parties also agreed to each appoint a registered forester to determine if Godowns had cut any trees on Hudson's land, and if so, their monetary value. If the foresters disagreed on the value of the trees, the trial court without a jury would determine damages and the issue of litigation costs.

At a subsequent hearing scheduled to determine damages, it became clear that, despite the purported settlement, "the parties had a major disagreement as to the location of the property line," as the trial court found. Hudson thought the line would be as shown on the plat between two points marked by "rebar found," while Godowns thought the line would be started at one of those points but then follow the bearing on the plat to a different endpoint. In an order, the trial court found that the agreement embodied by the Stipulated Order could be interpreted two ways, and that parol

2

evidence "clearly demonstrate[d] that there was no meeting of the minds and therefore no binding or enforceable agreement" ("the Rescinding Order"). Instead, the parties were "left where they began, with no agreement and a dispute as to the location of the property line along with all other issues[.]"

Hudson has challenged the trial court's Rescinding Order multiple times, in an unsuccessful application for interlocutory appeal to this court in opposition to Godowns' motion to open default, in a motion for summary judgment, in a motion titled "Plaintiff's Request of a Court Ruling on a Jury Resolution of Extrinsic Evidence," and in a "motion to set aside judgment" under OCGA § 9-11-60 (b), (d) (1). In separate, detailed orders, the trial court denied each motion, noting finally that Hudson had expended many resources arguing the same issue on multiple grounds.

After the parties waived their right to a jury trial, the trial court held a bench trial and the parties presented extensive testimony about the disputed boundary line. The court reviewed the evidence, made findings of fact, and concluded that the boundary line was located where Godowns thought it was. It also found that Godowns' surveyor had trespassed onto Hudson's land and awarded her $1 in nominal damages. Finally, the court awarded no attorney fees or costs, finding that each party had reasonable claims and none of them had acted in bad faith.

1. We note initially that Hudson's brief does not follow the form or sequences required by Court of Appeals Rule 25 (a) and (c) (1). While she enumerates seven errors, her argument section does not follow the order of the enumeration of errors, is not correspondingly numbered, and does not address the issues in sequence. Hudson's failure to adhere to our rules has hampered our ability to ensure that all her enumerations are addressed, but "to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations." *John Crane, Inc. v. Wommack*, 227 Ga. App. 538 (1) (489 SE2d 527) (1997).

2. Hudson essentially argues that the Stipulated Order accepting the parties' agreement was final and could not be modified outside that term of court. An order adjudicating fewer than all the claims is not final, however, and "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." OCGA § 9-11-54 (b). See *Hubbert v. Williams*, 175 Ga. App. 393, 394 (1) (333 SE2d 425) (1985). The trial court's Stipulated Order in this case was clearly not final because damages were still to be determined, as Hudson tacitly admitted by filing an application for interlocutory appeal of that order rather than a direct appeal. Because "no final order had been entered in the matter and the

4

case remained pending, . . . the superior court had authority to reconsider the [Stipulated Order], vacate it, and order that the matter proceed to trial." *Internal Med. Alliance v. Budell*, 290 Ga. App. 231, 235 (1) (659 SE2d 668) (2008).

3. Hudson argues that the trial court erred in finding an ambiguity in the parties' initial settlement agreement, and in resolving that ambiguity without a jury.

"Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749 (1) (525 SE2d 118) (1999). To be enforceable, the settlement agreement must be "definite, certain, unambiguous and satisfy the same requisites of formation and enforceability as any other contract[, and a] meeting of the minds is the first requirement of law relative to contracts." (Citations and punctuation omitted.) Id. at 749-750 (1). A purported settlement agreement in which the parties did not actually agree on the essential terms is not a settlement agreement at all. *Pourreza v. Teel Appraisals & Advisory*, 273 Ga. App. 880, 882-883 (616 SE2d 108) (2005).

When the trial court began the damages hearing in this case, it was immediately apparent that the parties had not actually agreed to the location of the boundary line between their properties. Hudson thought they had agreed to place the boundary line as it was drawn on her plat, from one marker to another marker, and Godowns

5

thought they had agreed to place the boundary line starting at a marker and using the compass direction written on the plat to locate the line. Applying the different interpretations resulted in different boundary lines.

On appeal, Hudson does not argue that the parties had actually agreed to the property line placement in the Stipulated Order. She argues instead that if the terms of the Stipulated Order are ambiguous, then a jury should have determined which party's interpretation of the ambiguity was correct.

Hudson confuses the issue of whether a settlement ever existed with the issue of interpreting a standard contract. In standard contract interpretation, if the parties agree to the existence of a contract, the trial court then determines whether the contract terms are ambiguous. *McKinley v. Coliseum Health Group*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011). If they are, the court then applies the rules of contract construction to resolve the ambiguity, and if the court cannot resolve the ambiguity, then a jury question exists over the meaning and intent of the parties. But the issue here is the threshold one of contract *formation*, not contract interpretation.

The first issue to determine when considering the enforceability of a contract, here the settlement agreement, is whether the parties actually agreed. "[A] trial court is obviously limited to those terms upon which the parties themselves have mutually

6

agreed. Absent such mutual agreement, there is no enforceable contract as between the parties." (Citations and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 696-697 (446 SE2d 199) (1994). Here, the trial court found that uncontroverted evidence showed that the parties had made a mutual mistake of fact and that there had been no meeting of the minds. Our review of the record leads us to conclude that the trial court was correct in this regard. Thus, the trial court did not err in determining that the parties failed to reach an agreement about the location of the boundary line between their properties.

4. Finally, Hudson asserts that the court erred in its factual determination of where the boundary line was located. "Factual findings and credibility determinations by the trial court will be upheld on appeal if there appears in the record any evidence to support them." *Dudley v. Snead*, 250 Ga. 804, 805 (1) (301 SE2d 480) (1983). Having reviewed the entire record, including the transcripts and exhibits, we conclude that some evidence supports the trial court's determination of the boundary line location, and thus affirm.

*Judgment affirmed. McFadden and McMillian, JJ., concur.*