**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 5, 2013**

# In the Court of Appeals of Georgia

A13A0454. GRAHAM et al. v. HHC ST. SIMONS, INC.

MCFADDEN, Judge.

James Alvin Graham, Sr. appeals the order denying his motion to enforce a settlement agreement as well as the grant of summary judgment to HHC St. Simons, Inc., a mental health facility. Graham argues that he could accept HHC's offer to settle this wrongful death action after the trial court had granted HHC summary judgment. He also argues that the trial court erred in granting HHC summary judgment.

We find that there was no meeting of the minds on the essential element of consideration, so there was no enforceable contract, and the trial court did not err in denying the motion to enforce a settlement agreement. But we find that the trial court erred in granting summary judgment to HHC on the basis of a letter agreement that

specified the allegedly negligent doctor was an independent contractor, because HHC has not shown that the agreement applies to this case. We therefore affirm in part and reverse in part.

1. *Facts.*

Graham filed this action on May 18, 2010, against HHC and others, alleging that they discharged his son from HHC when his son was a suicide risk. The son committed suicide within eight hours of his discharge.

HHC moved for summary judgment on June 21, 2012. On June 27, HHC sent Graham an OCGA § 9-11-68 offer of settlement for $100,000, stipulating that the offer remained open for 30 days, that is until July 27. Graham made a counter offer of $200,000, which HHC rejected on August 2, 2012. However, in its letter rejecting the counteroffer, HHC wrote that it "reiterate[d] [its] previous offer of One-Hundred Thousand ($100,000) on behalf of the Defendant facility, [HHC]." On August 22, 2012, the trial court granted HHC's motion for summary judgment.

The next day, Graham sent by facsimile a purported acceptance of the August 2, 2012 offer. He later filed a motion to enforce settlement. The trial court denied the motion, and Graham filed this appeal, challenging the denial of his motion to enforce settlement as well as the grant of summary judgment to HHC.

2

2. *Motion to enforce settlement agreement.*

"In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a de novo standard of review and, thus, view the evidence in a light most favorable to the nonmoving party." *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012) (citations omitted). We conclude that the undisputed evidence shows that the minds of the parties did not meet at the same time and in the same sense on the essential contractual element of consideration. Therefore, the trial court properly denied the motion to enforce a purported settlement agreement.

The ordinary rules of contract construction apply to this issue.[1] The June 27, 2012 offer of settlement was made under OCGA § 9-11-68, which imposes specific requirements for making such offers and establishes specific consequences for rejecting such offers. But by its express terms, that offer expired within 30 days, and it is undisputed that Graham did not accept it within that period. Thus, the crucial offer is the offer in the August 2, 2012 letter "re-iterating" the expired June 27, 2012 offer to settle. That offer is not itself an OCGA § 9-11-68 offer of settlement, because

---

[1]We thank the amici, the Georgia Defense Lawyers Association and the Georgia Trial Lawyers Association, for filing excellent briefs on this issue.

it was sent by facsimile and email, not by certified mail or statutory overnight delivery as OCGA § 9-11-68 (a) (8) requires. Therefore, to determine whether the parties reached a contract, we must apply the ordinary rules of contract construction, not any rules specific to OCGA § 9-11-68 offers of settlement. See *UniFund Fin. Corp. v. Donaghue*, 288 Ga. App. 81, 82 (653 SE2d 513) (2007).

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "A contract is unenforceable where there is no meeting of the minds between the parties regarding a material element thereof." *Coca-Cola Bottlers' Sales &c. v. Novelis Corp.*, 311 Ga. App. 161, 167 (4) (715 SE2d 692) (2011). And all essential elements, including the element of consideration, must be certain. *Drake v. Wallace*, 259 Ga. App. 111, 113 (576 SE2d 87) (2003) (citation omitted).

"[T]he cardinal rule of construction is to determine the intention of the parties." *UniFund*, 288 Ga. App. at 82.

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable [person] in the position of the other

4

contracting party would ascribe to the first party's manifestations of assent.

*Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982). "In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." *Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374) (2006) (citations and punctuation omitted). Similarly, "parol evidence is admissible to show want or failure of consideration." *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 534 (3) (677 SE2d 328) (2009) (citations omitted). "Parol evidence is admissible, not for the purpose of showing that a promise different from the written one was made, but that it is different in legal effect as a consequence of the want, cessation, or shrinkage of the consideration." *A. E. Speer, Inc. v. McCorvey*, 77 Ga. App. 715, 719 (3) (49 SE2d 677) (1948).

The offer that was "re-iterated" in the August 2, 2012 letter expressly defined the consideration: in exchange for HHC's payment of $100,000, Graham would dismiss with prejudice "each and every claim that [Graham]

5

ha[d] made, or that could have been made in the above-styled action against [HHC], as well as any claims which [had] arisen between the parties during the course of this litigation" and would provide a fully executed release of all such claims. It is objectively reasonable to conclude that HHC expected to receive a dismissal with prejudice of the pending lawsuit in exchange for its payment of $100,000. See *Cox*, supra, 250 Ga. at 395 (citations omitted) (courts must apply an objective, reasonable person theory of intent when determining if parties had a meeting of the minds required to reach agreement).

Graham counters that the consideration for HHC's proposed payment of $100,000 was not only the release of liability, but also the cessation of litigation, including the right to pursue an appeal. But when HHC made its proposal on August 2, 2010, Graham's action was still pending and HHC's summary judgment motion – while ripe to be decided at any time – had not yet been granted. Graham's position is not objectively reasonable. It is clear that when Graham attempted to accept the offer of settlement, the parties did not agree as to what they intended the consideration to be.

Extrinsic evidence bolsters the conclusion that the consideration described by Graham was not HHC's intent. Graham attached to his motion to

6

enforce settlement a letter from HHC in response to his purported acceptance of the offer. Four days after Graham's purported acceptance, HHC wrote to Graham's attorney that Graham's

> claims against the Defendant facility were dismissed as of August 22, 2012, prior to [his] client's attempt to settle said claims on August 23, 2012. As such, any invitation to continue settlement negotiations was no longer on the table at the time [his] client attempted to reach a settlement agreement, due to a lack of consideration as that phase is interpreted under applicable Georgia law.

"[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." *Powerhouse Custom Homes v. 84 Lumber Co.*, 307 Ga. App. 605, 607 (705 SE2d 704) (2011) (citation omitted). The evidence belies Graham's claim that the parties agreed on the crucial element of consideration at the same time, in the same sense.

Moreover, if an offer does not contain a specified expiration date, the offer must be accepted within a reasonable time. *Wilkins v. Butler*, 187 Ga. App. 84 (369 SE2d 267) (1988). "What constitutes a reasonable time in any given case must depend upon its own peculiar facts." Id. (citation omitted).

7

Given the fact that the summary judgment motion was pending and ripe for resolution when HHC made its offer, a reasonable time for acceptance of the offer was *before* the trial court granted summary judgment.

The trial court correctly denied Graham's motion to enforce the purported settlement agreement. *Drake*, 259 Ga. App. at 113 (some evidence that parties did not agree on consideration meant promissory note was unenforceable). See also *Hamilton v. Harper*, 404 SE2d 540 (WV 1991); *Mott v. Wal-Mart Stores*, 2011 Conn. Super. LEXIS 2844 (Conn. Super. Ct. Nov. 8, 2011)

3. *Summary judgment.*

The trial court granted HHC summary judgment on the ground that there was "no evidence than any employee or agent of HHC did anything which influenced or affected the medical judgment" of the doctor who made the decision to discharge Graham's son and that the doctor was not an employee of HHC. Graham argues that the court erred in finding as a matter of law that the doctor was not an employee.

In making its ruling, the trial court relied on OCGA § 51-2-5.1, which limits a hospital's vicarious liability for the negligence of a non-employee

physician or other health care professional. In pertinent part, the statute provides:

> Whether a health care professional is an actual agent, an employee, or an independent contractor shall be determined by the language of the contract between the health care professional and the hospital. In the absence of such a contract, or if the contract is unclear or ambiguous, a health care professional shall only be considered the hospital's employee or actual agent if it can be shown by a preponderance of the evidence that the hospital reserves the right to control the time, manner, or method in which the health care professional performs the services for which licensed, as distinguished from the right to merely require certain definite results.

OCGA § 51-2-5.1 (f). OCGA § 51-2-5.1 (g) lists factors that the trial court may and may not consider in determinating whether a health care professional is an agent, employee or independent contractor, should it find that there is no contract or that the contract is unclear or ambiguous.

Here, the trial court stated that it had reviewed the "relevant documents and conclude[d] that the relationship they created between HHC and [the doctor] is unambiguous" and that the doctor was acting as an independent contractor when he made the decision to discharge Graham's son. The court

9

did not specify the documents upon which it relied, but HHC argues that only one contract existed between it and the doctor, a January 1, 2007 letter of agreement that describes the doctor as an independent contractor, stating that "[a]s an independent contractor, [the doctor would] use [his] own professional judgment in carrying out the duties and responsibilities identified in [the a]greement." Graham agrees that the only relevant document is the letter agreement.

The first two paragraphs of that document provide:

> Thank you for your support with patient coverage and rounds for the psychiatric program at our hospital when the managed care rate is inclusive of physician fees or the patient meets the hospital's indigent care definition. This letter is intended to set forth the agreement between you and HHC St. Simons, Inc. dba Focus by the Sea ("Hospital") with respect to such services.

> You agree by signing this document that you will provide patient coverage, rounds, and attend treatment teams at the Hospital for patients when the managed care rate is inclusive of physician fees.

Pretermitting whether the letter agreement establishes the doctor's status as that of an independent contractor, HHC has not shown that the letter agreement applies to this case. It has pointed to no evidence that Graham's son's "managed care rate [was] inclusive of physician fees" or that he was indigent. The doctor himself testified that he did not know the terms of the insurance agreement between Graham's son and HHC, so he did not know what the billing arrangement was between him and the hospital in that particular case. HHC's representative testified that there was no letter agreement that covered the situation when the doctor billed directly for his own services. Nor could the doctor remember any such agreement. Accordingly, whether the letter agreement governed the relationship between the doctor and HHC apropos of the doctor's treatment of Graham's son is an issue of fact. The trial court therefore erred by finding that, as a matter of law, the doctor was an independent contractor under OCGA § 51-2-5.1.

*Judgment affirmed in part and reversed in part. Doyle, P. J., concurs. Boggs, J., concurs in the judgement only.*