**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**February 18, 2021**

# In the Court of Appeals of Georgia

A20A1754. SIDHOM et al. v. BOUTROS.

MARKLE, Judge.

After Thomas Boutros ended his engagement with Sarah Sidhom, Sarah and her parents (collectively "the Sidhoms") sued him to recover the gifts and expenses arising from their engagement. The trial court granted summary judgment to Boutros, and the Sidhoms now appeal. For the reasons that follow, we reverse the trial court's order granting summary judgment to Boutros, and remand the case for further proceedings.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all

reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008).

So viewed, the record shows that the Sidhoms are members of the Coptic Orthodox Church. In 2017, Sarah and Boutros began dating. That same year, they got engaged and, with the approval of the Church, they signed an engagement agreement. Under the terms of the agreement,

[i]f either of the two parties revokes this engagement, without legal reason, and if it is [Boutros] who revokes it, the [ring] and any subsequent gifts become the possession of [Sarah]. However, if the revocation is on the part of [Sarah], she must return to him [the ring], and any subsequent non-consumable gifts or their monetary value.

In the months leading up to the wedding, Sarah and Boutros had an engagement party and a bridal shower, resulting in numerous gifts that were then stored at a home Boutros had purchased. The Sidhoms also purchased Sarah's wedding dress and furnishings for the home, and they incurred expenses for wedding preparations.

2

Unfortunately, Boutros decided to end the engagement.[1] Sarah and Boutros then signed a revocation agreement, indicating that

> [t]hey have both decided to revoke their engagement, willingly, by choice . . . . They have completed all settlements with one another. . . . Neither of them has any claim against the other, neither civil nor moral, . . . neither before civil court nor other entities.

Thereafter, the Sidhoms filed the instant suit against Boutros for conversion and breach of contract, alleging that he had not returned the wedding gifts and other items to them despite their requests.[2] They sought damages and attorney fees, a declaratory judgment to establish ownership of the items, and a temporary injunction to prevent Boutros from disposing of the property. They later amended their complaint to add a claim of unjust enrichment.

---

[1] In his response to the Sidhoms' request to admit, and in later filings with the court, Boutros claimed that Sarah imposed conditions on the engagement and gave him ultimatums, which he rejected, and thus she was the one responsible for ending the engagement. But in his statement of undisputed facts, he admitted that he ended the engagement.

[2] According to Boutros, the parties agreed that the Sidhoms would keep the engagement ring and wedding bands, and the gifts received at the bridal shower, but that he would be entitled to keep the remaining items stored in his home.

Boutros answered the complaint and filed a cross-claim for indemnification and contribution against Sarah in the event he was liable to her parents. Thereafter, both parties moved for summary judgment. Boutros argued that the revocation agreement controlled the dispute and that, by its terms, it showed that all claims were settled. The Sidhoms argued that the engagement contract and revocation agreement must be read together, and that the revocation agreement lacked mutual assent of the parties.

Following a hearing, the trial court granted Boutros's summary judgment motion, and denied the Sidhoms' cross motion, finding that the language in the revocation agreement was plain and unambiguous and showed that the parties had revoked the engagement agreement and settled their claims. The Sidhoms now appeal.

In related enumerations of error, the Sidhoms argue that the trial court erred in granting summary judgment to Boutros and denying their motion for summary judgment because the engagement agreement and revocation agreement must be read together, and Boutros failed to adhere to his obligations under the engagement agreement. Alternatively, they argue that there were factual questions that precluded summary judgment, such as whether the parties mutually assented to enter into the revocation agreement, whether Boutros is in breach of the engagement agreement or

4

liable for conversion of the property, and whether Boutros fraudulently induced Sarah to sign the revocation agreement.[3] We conclude that summary judgment was not warranted because there is a factual question about whether the parties had the mutual assent to enter into the revocation agreement. And, because the parties' mutual assent to enter into the agreement is a threshold question, we do not reach the dispute over the meaning of the revocation agreement. See *Hudson v. Godowns*, 320 Ga. App. 157, 160 (3) (739 SE2d 462) (2013).

"[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Sherman v. Dickey*, 322 Ga. App. 228, 232 (1) (744 SE2d 408) (2013). A valid contract requires mutual assent, and if such assent is lacking, the contract is not enforceable.[4] OCGA § 13-3-1; *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004); see also *Vildibill v. Palmer Johnson of Savannah, Inc.*, 244 Ga. App. 747, 749 (3) (536 SE2d 779) (2000) ("parties to a contract may rescind it by mutual agreement") (citation omitted).

---

[3] The Sidhoms did not allege fraudulent inducement in their complaint. Instead, they requested equitable relief due to Boutros's failure to adhere to the terms of the engagement contract and revocation agreement.

[4] The Sidhoms do not argue that the other elements of contract formation were lacking.

In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent. In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

(Citations and punctuation omitted.) *Hart v. Hart*, 297 Ga. 709, 711 (777 SE2d 431) (2015); see also *Graham v. HHC St. Simons, Inc.*, 322 Ga. App. 693, 695-696 (2) (746 SE2d 157) (2013) (physical precedent only) ("the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.") (citation omitted). "[M]utual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties." (Citation omitted.) *Extremity Healthcare, Inc. v. Access To Care America, LLC*, 339 Ga. App. 246, 252 (1) (793 SE2d 529) (2016). But, "where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." (Citation omitted.) *Moreno v. Smith*, 299

6

Ga. 443, 445 (1) (788 SE2d 349) (2016); see also *Bedsole v. Action Outdoor Advertising JV, LLC*, 325 Ga. App. 194, 198 (1) (750 SE2d 445) (2013).

Here, the trial court did not address the Sidhoms' claim that there was a lack of mutual assent. Our review of the limited record here shows that there is a question of fact as to the parties' mutual assent. In her affidavit, Sarah avers that Boutros orally agreed to return certain items as set forth in the engagement agreement before they signed the revocation agreement, but that he subsequently failed to follow through. She stated that "it was [her] further understanding that the Revocation Agreement was a conditional document that incorporated the Engagement Agreement in the event the marriage plans were terminated[.]"[5] In response to interrogatories, Boutros admitted that the parties made a verbal agreement regarding the return of various items the day they signed the revocation agreement.

The affidavit was sufficient to create a factual issue as to whether there was mutual assent to all the terms of the revocation agreement, and therefore summary judgment was improper. See *Moreno*, 299 Ga. at 444 (1) (party's affidavit in

[5] The record also contains a single e-mail from Sarah to the religious officiant the day after the parties signed the revocation agreement. In this e-mail, Sarah indicates that she expects Boutros to return certain items. We express no opinion as to whether this is admissible evidence to oppose summary judgment.

opposition to motion for summary judgment created factual question about mutual assent to contract); see also *Hudson*, 320 Ga. App. at 160 (3) (parties' disagreement over property boundary lines showed lack of meeting of the minds despite signed settlement agreement). Compare *Extremity Healthcare, Inc.*, 339 Ga. App. at 255-256 (1) (parole evidence that occurred after the contract was signed cannot by itself show lack of mutual assent). Although we cannot consider the affidavit to change the terms of the revocation agreement, we can consider it to determine whether the parties reached a valid agreement in the first place. See *Moreno*, 299 Ga. at 445 (1). Indeed, Boutros admits that there was a verbal agreement regarding the return of at least some of the items. Thus, Sarah's affidavit creates a factual question whether she and Boutros had mutually assented to the terms of the revocation agreement, and Boutros was not entitled to summary judgment.[6]

Accordingly, we must reverse the trial court's award of summary judgment, and remand the case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Reese, P. J. concurs. Colvin, J. dissents.*

---

[6] For this same reason, the Sidhoms were not entitled to summary judgment.

# In the Court of Appeals of Georgia

A20A1754. SIDHOM et al. v. BOUTROS.

COLVIN, Judge, dissenting.

The man and the woman who entered into this written agreement to marry subsequently revoked that agreement in a writing, signed by both, which stated that they "ha[d] completed all settlements with one another" and that neither "ha[d] any claim against the other[.]" Because this revocation was a conclusive and binding termination of the parties' relationship, reached by mutual assent, I dissent to the majority's reversal of the trial court's grant of summary judgment to this defendant.

The only question facing us is whether the parties' revocation agreement is enforceable as a settlement agreement, which

must meet the same requirements of formation and enforceability as other contracts. Thus, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort.

(Citation and punctuation omitted.) *Hansen v. Doan*, 320 Ga. App. 609, 612 (740 SE2d 338) (2013). "When it is undisputed that a settlement agreement is definite, certain, and unambiguous, the court is obligated to put an end to the litigation by making the settlement its own judgment." (Citation and punctuation omitted.) *Sanders v. Graves*, 297 Ga. App. 779, 779 (678 SE2d 220) (2009). I understand that "the question of whether a party has assented to [a] contract is generally a matter for the jury." *Bedsole v. Action Outdoor Advertising JV, LLC*, 325 Ga. App. 194 (750 SE2d 445) (2013). But the same law provides that we "apply an *objective* theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent[.]" Id. See also *Hansen*, 320 Ga. App. at 612-613 (1); *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982). And there remains "'no rule of law better settled or more salutary in its application, than that which refuses to admit oral testimony to contradict, vary, or

2

materially affect, written agreements.'" *AgSouth Farm Credit v. Gowen Timber Co.*, 336 Ga. App. 581, 590 (2) (b) (i) (784 SE2d 913) (2016), quoting *Weintraub v. Cobb Bank & Trust Co.*, 249 Ga. 148, 148-149 (1) (288 SE2d 553) (1982).

Here, plaintiffs' evidence shows that the couple's disagreements over property continued up to the day of the revocation agreement. I understand that as of that day, Boutros may not have returned all of the items Sidhom sought, though he dropped some off a few days later. By any objective standard, however, the agreement unequivocally ended the ongoing dispute when it provided, before three witnesses, that *both* parties had "decided to revoke their engagement, willingly, by choice, without being compelled or imposed upon"; that they had "completed *all* settlements with one another"; and that neither party had "*any* claim against the other, neither civil nor moral," and "neither before civil courts nor other entities." See *AgSouth*, 336 Ga. App. at 592 (2) (reversing denial of motion for j.n.o.v. when lender's oral promise to allow cutting of timber was insufficient to vary the unambiguous written terms of the loan, which barred such cutting without permission).

Plaintiffs attempt to escape the failure of their contract claim by asserting (on the last full page of their brief) that Boutros fraudulently induced Sidhom to sign the revocation agreement. In fact, plaintiffs have never asserted a claim for fraud. But

3

even if they had, and even if Boutros had assured Sidhom that he would return some or all of the property to her and failed to do so after the fact, "statements that directly contradict the terms of the agreement simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract." *Legacy Academy, Inc. v. Mamilove, LLC*, 297 Ga. 15, 18 (1) (771 SE2d 868) (2015), quoting *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 188-189 (718 SE2d 304) (2011). Only evidence that Sidhom was somehow *deprived of the capacity to read and assent to the revocation agreement itself* could authorize a claim arising from that agreement's subject matter. As the Georgia Supreme Court has held:

> "The law will not excuse [a plaintiff] for failing to read the instrument because of her confidence in the defendant, upon whom she had no legal right to rely, and who the allegations show employed *no trick or artifice that caused her to fail to do her duty in reading before signing*. No one can truthfully claim to have been defrauded in a matter about which that one has full knowledge and opportunity to exercise his free choice. . . . It is essential to all business relationships that the validity and solemnity of written contracts, freely and voluntarily executed, be upheld."

(Emphasis supplied.) Id. at 19 (1), quoting *Lewis v. Foy*, 189 Ga. 596, 601 (6 SE2d 788) (1940).

The written expression of these parties' intent to settle is unequivocal, and there is no evidence that this plaintiff was fraudulently prevented from reading the contract. Under these circumstances, the trial court properly granted summary judgment to Boutros on plaintiffs' claims for breach of contract and conversion. *Hansen*, 320 Ga. App. at 614 (1) (affirming trial court's enforcement of a settlement agreement where a party accepted an offer of settlement "'unequivocally and without variance of any sort'"). I therefore dissent.