**THIRD DIVISION
BARNES, P. J.,
DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 29, 2023**

# In the Court of Appeals of Georgia

A23A0331. ARNOLD v. LIGGINS.

DOYLE, Presiding Judge.

Following a motor vehicle collision, Joshua Liggins filed suit against Scott Arnold. The jury returned a verdict in favor of Liggins for $70,000, and the trial court entered a judgment for that amount plus costs of $245 and an additional $23,430 for attorney fees and litigation expenses under OCGA § 9-11-68. Arnold now appeals from the trial court's judgment, arguing that the trial court erred by: (1) excluding an accident report on a collision Liggins experienced two years earlier, (2) admitting a health insurance claim form as a medical bill, (3) allowing Liggins to request, in his closing argument, special damages that exceeded the amount identified in the consolidated pre-trial order, and (4) entering an award under OCGA § 9-11-68 because Liggins failed to comply with the statute's service requirements. For the

reasons that follow, we affirm the trial court's judgment except for the award under OCGA § 9-11-68, and we reverse that portion of the judgment.

The underlying facts are largely undisputed. Arnold and Liggins were driving on I-20 westbound when Arnold rear-ended Liggins. After Liggins filed suit, Arnold admitted he was at fault for the collision but denied proximate cause and damages.

On October 19, 2021, Liggins sent Arnold an offer of settlement, offering to dismiss all of his claims against Arnold in exchange for payment of $45,000. Arnold rejected the offer, and the case proceeded to trial. The jury returned a verdict for Liggins in the amount of $70,000. Liggins then sought attorney fees and costs of litigation under OCGA § 9-11-68. After a hearing, the trial court granted the motion and entered a final judgment of $70,000 plus $245 in costs and $23,430 under OCGA § 9-11-68. Arnold now appeals from the trial court's judgment.

1. Arnold contends that the trial court erred by not allowing him to introduce a police report concerning a collision Liggins experienced two years before his collision with Arnold. "[A]dmission of evidence is a matter resting within the sound

2

discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[1]

At trial, Liggins testified that he experienced back pain after the collision that gave rise to this case, which occurred in 2018. He also acknowledged that he was injured in a car accident before, in 2016. Arnold asked Liggins if the police were called after the 2016 accident, and Liggins answered that he could not recall.

Arnold then sought to introduce into evidence a certified copy of the motor vehicle accident report from the 2016 incident. Liggins objected to the extent Arnold sought to introduce the narrative contained in that report, arguing that it was hearsay. Arnold argued that the entire report was admissible under OCGA § 24-8-803 (6), as a record or regularly conducted activity, or § 24-8-803 (8), as a public record or report.

The trial court sustained the objection, ruling that although Arnold could ask Liggins to review the report to refresh his recollection of the accident, the narrative itself could not be tendered as evidence. Liggins was then provided a copy of the report, and Arnold asked him, "Isn't it true, Mr. Liggins, that after that accident in

---

[1] (Citations and punctuation omitted.) *Samuels v. State*, 335 Ga. App. 819, 821 (1) (783 SE2d 344) (2016).

2016 that you told the officer that you had back pain?" Liggins responded that he could not remember, and, although Arnold attempted to ask more questions, the trial court ruled that he needed to accept Liggins's answer and move on.

After the court's ruling, Arnold introduced a photograph of Liggins's car after the 2016 accident and questioned Liggins about his injuries from that accident. Liggins testified that he suffered a rip in his small intestine, bruising on his hip, a dislocated elbow, and pain in his hip. Additionally, Liggins acknowledged that his medical records from the 2016 accident, which were admitted into evidence, stated that the force of impact was severe, that he experienced a loss of consciousness and sustained injury to his head, neck, and chest, and that he complained of pain in his neck and hip.

At the conclusion of the State's case-in-chief, Arnold proffered a copy of the police report for the record. He argued that the report was self-authenticating under an exception to the rule against hearsay. The trial court again ruled that the report was inadmissible, stating, "I don't agree with you. I think you need to have the police officer here available for cross-examination[.]"

On appeal, Arnold contends that he should have been permitted to introduce the police report into evidence because the report was admissible under OCGA § 24-

4

8-803 (8) and the statement documented in the narrative — specifically, Liggins's complaint of "severe pain" in his chest, back, and neck — was a present sense impression within the meaning of OCGA § 24-8-803 (1).[2]

Pursuant to OCGA § 24-8-803 (8), there is an exception to the hearsay[3] rule for public records and reports.[4] Under this provision, a police report is admissible in a civil case to the extent it documents observations made by the officer himself.[5] To the extent a police report documents hearsay statements made by another declarant to the

---

[2] Notably, Arnold does not contend on appeal, and did not argue before the trial court, that Liggins's statement was admissible non-hearsay because it was an admission by a party-opponent within the meaning of OCGA § 24-8-801 (d) (2). "[W]e do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court." (Citation omitted). *Roberts v. First Ga. Community Bank*, 335 Ga. App. 228, 230 (1) (779 SE2d 113) (2015).

[3] Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c).

[4] OCGA § 24-8-803 provides that "[t]he following shall not be excluded by the hearsay rule . . . (8) Public records and reports. Except as otherwise provided by law, public records, reports, statements, or data compilations, in any form, of public offices, setting forth: . . . (B) Matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) In civil proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness[.]"

[5] See *Maloof v. MARTA*, 330 Ga. App. 763, 767 (2) (769 SE2d 174) (2015).

5

officer, pursuant to OCGA § 24-8-805, "hearsay within hearsay is admissible only if each part of the combined statements conforms with an exception to the hearsay rule."[6]

Arnold contends that Liggins's complaint of back pain was a present sense impression within the meaning of OCGA § 24-8-803 (1), which provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter" shall not be excluded by the hearsay rule.[7] But pretermitting whether a driver's complaint of back pain after a car accident can qualify as a present sense impression, there is nothing in the record establishing the circumstances surrounding Liggins's declaration of pain in this case. For example, there is no indication of how soon after the collision Liggins complained of pain nor whether he made the declaration spontaneously.

Moreover, even if the trial court erred by refusing to allow Arnold to introduce this evidence, that error was harmless in light of the other evidence in the case.

---

[6] (Citations and punctuation omitted.) *Tuggle v. Rose*, 333 Ga. App. 431, 434 (2) (773 SE2d 485) (2015) (where plaintiffs sought to introduce an investigator's report summarizing witnesses' statements on the incident, the business records exception overcame only one layer of hearsay and the plaintiffs' failure to identify an exception for the second layer of hearsay rendered the evidence inadmissible).

[7] OCGA § 24-8-803 (1).

Arnold contends that by excluding this evidence, the trial court severely undercut his ability to show the jury that Liggins had back pain before the 2018 collision, a fact that would weigh into the jury's review of Liggins's medical records and claims for future pain and suffering. But the defense introduced Liggins's medical records from the 2016 accident, and Liggins acknowledged that he sustained multiple injuries, including to his head, neck, chest, and hip, in that accident. Consequently, the exclusion of this evidence did not prevent Arnold from showing that Liggins experienced serious injuries in an earlier accident, and under the circumstances of this case, any error in excluding this evidence was harmless.[8]

2. Arnold contends that the trial court erred by admitting a document regarding charges for Liggins's MRI, arguing that the form did not qualify as a "medical bill"

---

[8] See *Haskins v. Ga. Neurosurgical Institute, P.C.*, 355 Ga. App. 781, 783 (2) (845 SE2d 770) (2020) (harmless error doctrine applies to erroneous evidentiary rulings).

7

within the meaning of the relevant evidentiary statute.[9] Arnold's argument concerns OCGA § 24-9-921, which provides as follows:

> (a) Upon the trial of any civil proceeding involving injury or disease, the patient or the member of his or her family or other person responsible for the care of the patient shall be a competent witness to identify bills for expenses incurred in the treatment of the patient upon a showing by such a witness that the expenses were incurred in connection with the treatment of the injury, disease, or disability involved in the subject of litigation at trial and that the bills were received from: (1) A hospital; (2) An ambulance service; (3) A pharmacy, drugstore, or supplier of therapeutic or orthopedic devices; or (4) A licensed practicing physician, dentist, orthodontist, podiatrist, physical or occupational therapist, doctor of chiropractic, psychologist, advanced practice registered nurse, social worker, professional counselor, or marriage and family therapist.

> (b) Such items of evidence need not be identified by the one who submits the bill, and it shall not be necessary for an expert witness to testify that the charges were reasonable and necessary. However,

---

[9] Arnold also argues that the form was inadmissible hearsay. But he did not object on that ground at trial, so this claim of error has been waived. See OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived[.]"); *Steen-Jorgensen v. Huff*, 352 Ga. App. 727, 733 (3) (835 SE2d 707) (2019) (where appellant objected to a document on the ground that it was not authenticated, but not on the ground that it was hearsay, she waived the hearsay objection).

8

nothing in this Code section shall be construed to limit the right of a thorough and sifting cross-examination as to such items of evidence.

At trial, Liggins testified that he underwent an MRI of his lower back at American Health Imaging and that he incurred expenses for his visit. He identified Plaintiff's Exhibit I as the bill he received from American Health Imaging, and the document (along with the accompanying affidavit) was admitted into evidence over Arnold's objection.

The document lists American Health Imaging Decatur as the "service facility" and AHI Decatur, LLC as the "billing provider[.]" Liggins's information is listed in the spaces for the patient's name and address, and "Medchex" is listed in the space for "program name." Additionally, the top of the document lists Medchex's address — a post office box in Pittsburgh — although because of redactions, it is unclear whether Medchex was the sender or recipient. The document was accompanied by a "Medical Billing Affidavit," which was signed by the Custodian of Billing Records for "OMNI" and provided: "Attached to this affidavit are billing records that provide an itemized statement of the service and the charge for the service that American Health Imaging of Decatur c/o OMNI provided to Joshua Liggins[.]" The document

9

listed a "total charge" of $2,370, and the affidavit identified a "remaining balance" of the same amount.

Arnold contends that the document was not a medical bill within the meaning of OCGA § 24-9-921 but was, instead, a health insurance claim form. He asserts that the document itself indicates that it was "from Medchex," not from the provider who performed the MRI, and claims that the accompanying affidavit from the records custodian is further proof that the purported bill was issued by a third party rather than by the actual provider. Arnold has not identified any authority in support of his contention that the document submitted as Exhibit I does not qualify as a medical bill under OCGA § 24-9-921. More importantly, he has not shown that the admission of this document, even if erroneous, was harmful. Crucially, Arnold has not established, or even argued, that the document misled the jury as to the amount Liggins was charged for the MRI he received at American Health Imaging. This lack of evidence is particularly glaring because the statute expressly granted him the right to conduct a "thorough and sifting cross-examination as to [the purported bill]."[10]

We note, further, that although the total cost of Liggins's medical care was obviously a disputed issue in this case, the jury's verdict of $70,000 was based largely

---

[10] OCGA § 24-9-921 (b).

on the jury's evaluation of his pain and suffering and other general damages rather than on medical expenses he had already incurred. In closing arguments, Arnold asserted that Liggins had produced medical bills totaling $14,884.84 and encouraged the jury to award him only $5,000, to cover his emergency room visit on the day of the accident and a small amount for pain and suffering. Liggins's attorney described his past medical bills as totaling "a couple grand" and asked the jury to award $160,629.20, to cover not only those damages but also his lost earnings, loss of normal life, past pain and suffering, and future medical expenses. The jury did not complete a special verdict form, so it is impossible for us to determine exactly what portion of its $70,000 verdict was based on itemized medical bills. But even if the $2,370 bill was erroneously presented to the jury, it does not appear to have had a significant effect on the jury's resolution of this case.[11] Additionally, given the absence of a special verdict form, we would overturn the verdict only if it were "so flagrantly excessive or inadequate, in light of the evidence, as to create a clear

---

[11] See *Bailey v. Annistown Road Baptist Church*, *Inc.*, 301 Ga. App. 677, 692 (14) (689 SE2d 62) (2009) ("It is axiomatic that harm as well as error must be shown to authorize a reversal by this court.") (citation and punctuation omitted).

11

implication of bias, prejudice, or gross mistake [by] the jurors."[12] Under these circumstances, we discern no reversible error in the trial court's admission of this document.

3. Arnold contends that the trial court erred in allowing Liggins to argue at closing that his loss of earnings totaled $17,281, which exceeded the amount identified in the consolidated pre-trial order. The trial court has broad discretion to rule upon objections to improper closing argument, and we will not grant a new trial unless there has been a manifest abuse of that discretion.[13]

According to the consolidated pre-trial order, Liggins was seeking the following damages in this case: attorney fees and expenses, special damages (which the order described as medical expenses incurred and loss of earnings "as proven at trial[,]"), future medical expenses, general damages (described as "personal injury and other damages naturally flowing from the [collision]"), direct and consequential

---

[12]*Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002) ("In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. This duty becomes most onerous when the jury is not required to render a special verdict as to damages.") (Citation and punctuation omitted).

[13] See *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213, 218 (3) (351 SE2d 650) (1986).

damages, and compensatory damages. The order noted that Liggins had identified $10,562 in lost earning capacity and $14,844.84 in past medical expenses.

At trial, however, Liggins asserted in his closing argument that his loss of earnings was $17,281, plus $14,844.84 in past medical expenses, for a total amount of "damages that we can calculate" of $32,125.84. Arnold objected, arguing that the amount being claimed for lost earnings did not match the amount claimed in the pre-trial order. Liggins responded that the amount listed in the consolidated pre-trial order was missing information on his "summer RA" position, and argued that Arnold was on notice because he had received "a copy of his accounting." The trial court ruled, "I don't know what to do. . . . I think you just need to move on." Without further discussion, Liggins then finished his closing argument, ultimately asking the jury to award $160,629.20 to cover his pain and suffering and future medical bills as well. After the jury was excused for the day, Arnold reiterated his objection for the record. The trial court responded, "Well, I think you've made your point in front of the jury, they exaggerated the amount somehow."

On appeal, Arnold contends that, by allowing Liggins to claim a greater amount of lost earnings than identified in the consolidated pre-trial order, the trial court deprived him of the ability to conduct discovery and prepare a defense on those

13

calculations. He emphasizes that pursuant to OCGA § 9-11-9 (g), "[w]hen items of special damage are claimed, they shall be specifically stated." . But even assuming Arnold is correct that Liggins violated this provision, Arnold has not identified any authority suggesting that an appropriate remedy in this case is a new trial. "The remedy for failure to plead special damages is to move for a more definite statement of the plaintiff's claim,"[14] and Arnold did not make such a motion. Further, as the trial court observed, Arnold argued before the jury that Liggins was exaggerating his amount of lost wages, and, as discussed above, it is clear that the jury's verdict was based primarily on an award for pain and suffering. Under these circumstances, we reject Arnold's assertion that the trial court manifestly abused its discretion in handling this issue.

4. Arnold contends that the trial court erred in granting an award under OCGA § 9-11-68 because, when Liggins sent Arnold his offer to settle the case for $45,000, he served it by e-mail rather than by certified mail or overnight delivery as required

---

[14] (Citation omitted.) *Alta Anesthesia Assocs. of Ga., P.C. v. Gibbons*, 245 Ga. App. 79, 90 (9) (537 SE2d 388 (2000)) (rejecting claim that trial court erred by entering an award of special damages, in accordance with the jury's verdict, because the defendant did not move for a more definite statement).

14

by the statute. To resolve this claim of error, we must determine whether service by e-mail was sufficient.

The interpretation of a statute presents a question of law, which we review de novo.[15]

> [W]hen interpreting any statute, we necessarily begin our analysis with familiar and binding canons of construction. In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. Further, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.[16]

---

[15] See *Chadwick v. Brazell*, 331 Ga. App. 373, 375 (2) (771 SE2d 75) (2015).

[16] (Citations and punctuation omitted.) *Harris v. Mahone*, 340 Ga. App. 415, 417-418 (1) (797 SE2d 688) (2017).

Additionally, we recognize that "because any statute that provides for the award of attorney fees is in derogation of common law, it must be strictly construed against the award of such damages."[17]

OCGA § 9-11-68 applies to written offers of settlement in tort cases.[18] As relevant to this appeal, the statute provides that a plaintiff may recover certain attorney fees and expenses if he makes an offer to settle a claim, the defendant rejects the offer, and the plaintiff subsequently recovers a final judgment that is more than 125 percent of the amount specified in the offer.[19] Pursuant to OCGA § 9-11-68 (a), the requirements of an offer made under this provision are as follows.

> (a) . . . Any offer under this Code section must: (1) Be in writing and state that it is being made pursuant to this Code section; (2) Identify the party or parties making the proposal and the party or parties to whom the proposal is being made; (3) Identify generally the claim or claims the proposal is attempting to resolve; (4) State with particularity any relevant conditions; (5) State the total amount of the proposal; (6) State with particularity the amount proposed to settle a claim for punitive damages, if any; (7) State whether the proposal includes attorney's fees or other expenses and whether attorney's fees or other expenses are part

---

[17] (Citations and punctuation omitted.) Id. at 418 (1).

[18] See OCGA § 9-11-68 (a).

[19] See OCGA § 9-11-68 (b) (2).

16

of the legal claim; and (8) *Include a certificate of service and be served by certified mail or statutory overnight delivery in the form required by Code Section 9-11-5.*[20]

Turning to OCGA § 9-11-5, subsection (b) sets forth the requirements for making service in person, by mail, and by e-mail.[21] Subsection (f), titled "[e]lectronic service of pleadings[,]" provides that "[a] person to be served may consent to being served with pleadings electronically[.]"[22] And pursuant to subsection (f) (4), "[w]hen an attorney files a pleading in a case via an electronic filing service provider, such attorney shall be deemed to have consented to be served electronically with future

---

[20] (Emphasis supplied.) OCGA § 9-11-68 (a).

[21] See OCGA § 9-11-5 (b) ("Service. . . shall be made by delivering a copy to the person to be served or by mailing it to the person to be served at the person's last known address or, if no address is known, by leaving it with the clerk of the court. As used in this Code section, the term 'delivery of a copy' means handing it to the person to be served or leaving it at the person to be served's office with a person in charge thereof[.] . . . 'Delivery of a copy' also means transmitting a copy via email in portable document format (PDF) to the person to be served using all email addresses provided pursuant to subsection (f) of this Code section and showing in the subject line of the email message the words 'STATUTORY ELECTRONIC SERVICE' in capital letters. Service by mail is complete upon mailing.").

[22] OCGA § 9-11-5 (f) (1).

17

pleadings for such case[.]"[23] Liggins relies on these provisions to support his argument that the award was proper even though he served his offer only by e-mail.

In *Graham v. HHC St. Simons, Inc.*,[24] we concluded that a message from one party to another did not qualify as an offer under § 9-11-68 "because it was sent by facsimile and e-mail, not by certified mail or statutory overnight delivery as OCGA § 9-11-68 (a) (8) requires."[25] Liggins correctly notes that *Graham* was decided before the Georgia legislature amended § 9-11-5 to provide that when an attorney files a pleading in a case electronically, he will be deemed to have consented to be served electronically.[26] But we do not believe this amendment to OCGA § 9-11-5 changes the meaning of OCGA § 9-11-68 (a) (8) because although § 9-11-68 (a) (8) refers to § 9-11-5, it does not provide that service may be accomplished by any method listed in § 9-11-5, including by e-mail. Instead, § 9-11-68 (a) (8) provides that service of an offer made under that provision must be accomplished "by certified mail or statutory overnight delivery in the form required by Code Section 9-11-5." In this way, § 9-11-

---

[23] OCGA § 9-11-5 (f) (4).

[24] 322 Ga. App. 693 (746 SE2d 157) (2013) (physical precedent only).

[25] Id. at 695 (2).

[26] Ga. L. 2018, p. 550, § 1A-1.

68 (a) (8) is different from other statutory provisions which refer to § 9-11-5's identification of various methods of service. For example, OCGA § 9-11-24 (c) provides that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Code Section 9-11-5[,]" and OCGA § 9-11-25 (a) (1) provides that a motion to substitute following a party's death "shall be served on the parties as provided in Code Section 9-11-5[.]" Because OCGA § 9-11-68 (a) (8) plainly requires that an offer of settlement made under § 9-11-68 "must . . . . be served by certified mail or statutory overnight delivery," and refers to OCGA § 9-11-5 only as to the form of that service, we conclude that OCGA § 9-11-5's provisions regarding electronic service are inapplicable to offers of settlement made pursuant to OCGA § 9-11-68.[27]

We thus conclude that under the plain language of OCGA § 9-11-68 (a) (8), any offer of settlement made under § 9-11-68 must be served by certified mail or statutory overnight delivery. In this case, because Liggins served his offer only by e-

---

[27] Although in the future, the legislature may choose to amend OCGA § 9-11-68 to allow for electronic service in cases in which the parties have agreed to such service under OCGA § 9-11-5, at this point, it has not chosen to do so. "Matters of this nature are for the legislature to address. . . . It is not within the role of this Court to usurp the legislature's authority here. The role of the courts is to construe the law as it exists." (Citations and punctuation omitted.) *Ga. Trails & Rentals v. Rogers*, 359 Ga. App. 207, 219 (4) (855 SE2d 103) (2021).

mail rather than by certified mail or statutory overnight delivery, he was not eligible for an award under OCGA § 9-11-68. Consequently, we reverse that portion of the trial court's judgment.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Land, J., concur.*