**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0771. GLYNN COUNTY BOARD OF ASSESSORS v. SIA
    PROPCO I, LLC.

RICKMAN, Judge.

The Glynn County Board of Assessors (the "County") appeals the partial grant of summary judgment in favor of a property owner in this case involving the correct way to assess the value of condominiums located within the Cloister Ocean Residences on Sea Island (the "COR"). For the following reason, we reverse in part.

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the

nonmoving party."(Citations and punctuation omitted.) *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017).

As of 2015, SIA Propco I, LLC ("the Taxpayer") owned 52 Quarter Ownership Interests[1] of 17 condominium units in COR, and the County assigned each interest a fair market value for 2015 ad valorem tax purposes, using the sales comparison approach, based on two comparable Quarter Ownership Interest sales from 2014. The Taxpayer appealed the assessments to the Glynn County Board of Equalizations, which reduced the valuations to account for the value of Sea Island Club Membership[2] rights that were included in the sales price of the comparable properties. The County appealed that decision to the Superior Court of Glynn County.

The superior court granted partial summary judgment in favor of the Taxpayer, among other things, on the grounds that (1) the County assessments failed to exclude the value of membership in the Sea Island Club, which is associated with ownership at COR; and (2) the assessments failed to exclude any value arising from the fact that

---

[1] The COR allows ownership of quarter shares of an individual condominium unit; such an owner would be authorized to use the condominium for one-quarter of the year.

[2] Club membership associated with Quarter Ownership Interests provides unlimited year-round access to all Sea Island facilities, such as dining, golf, tennis, the spa, and fitness.

owners of Quarter Ownership Interests were required to pay only 25% of the annual club dues.[3] The County appeals these two rulings.[4]

1. In its order, the superior court determined that the County was required to exclude the value of Sea Island Club membership rights from the comparable sales price used to value the properties. The County challenges this holding.

The superior court framed the parties' respective arguments on the issue. The Taxpayer asserted: "Where membership rights are intangible personal property which cannot be taxed, . . . the gross comparable sales prices should be downwardly adjusted by the value of the membership received at the time of sale." The County asserted, on the other hand, that "there should be no such adjustment, as the quarter-interest purchase did not include membership, but rather included only a right to immediate access to membership."

This Court has previously addressed this issue involving the same club membership (but related to other Sea Island properties): whether the County was

_____

[3] The trial court found that there were issues of fact regarding the amount of the reduction in value resulting from each of these rulings. The County does not challenge that aspect of the trial court's rulings.

[4] The County does not challenge the trial court's other rulings. The County also does not appeal the denial of its own motion for summary judgment.

required to downwardly adjust the value of Sea Island Company properties by the value of Sea Island Club memberships. See *Morton v. Glynn County Board of Tax Assessors*, 294 Ga. App. 901, 903-907 (1) (670 SE2d 528) (2008). *Morton* held that although a club membership per se is intangible personal property and therefore not taxable real estate, if the applicable procedure for transferring club memberships shows that a purchaser obtains a right to apply for a membership with the club, rather than purchasing a membership directly from the property seller, such a right is inextricably bound with the sale of qualified real property and is, therefore, properly considered when assessing the fair market value of such properties. See Id. at 904-905 (1). Thus, the *Morton* Court concluded that "the County could properly include the enhanced value paid to the seller for the right to apply for membership as part of the fair market value of the property. This increased value is a benefit connected to the real property itself, rather than an intangible benefit such as goodwill." Id. at 905 (1).

The trial court in the present case found that the factual circumstances in *Morton* were distinguishable from the present case, but it did so by resolving an issue of fact, namely, an inconsistency between documents that govern the COR, including

the transfer of club memberships, and testimony from the vice president of membership at the club on the same topic.

More specifically, the trial court concluded:

In *Morton*, the sale of the membership was a separate transaction between the seller and the Club. Here, despite the language in the Public Offering Statement [and] Declaration, the undisputed fact[ ] remains that membership is guaranteed as part of the transaction between buyer and seller. [Citing the vice president's deposition.]

Yet as the trial court acknowledged, the Declaration of Condominium for the COR and the COR Public Offering Statement issued prior to sale each "provide that quarter-interest purchasers are entitled only to an opportunity to apply for membership." Indeed, the Declaration of Condominium for the COR provides that memberships are not transferrable, that COR sales terminate memberships, and that purchasers must then apply for club membership:

Membership in the [Club] held by an Owner of a Quarter Ownership Interest as a result of ownership of such Quarter Ownership Interest of Residence Unit shall terminate at such time as the Owner conveys, transfers, or otherwise disposes of such Quarter Ownership Interest. Such membership is not transferrable or assignable. The purchaser from any Owner of a Quarter Ownership Interest may, as determined by Sea Island Company, be provided an opportunity to apply for and, if

5

approved for membership by Sea Island Company, acquire a membership in [the Club].

Not surprisingly, the Declaration also states that "all Quarter Ownership Interests therein. . . shall be held, sold, conveyed, mortgaged, hypothecated, encumbered, leased, rented, occupied, improved and used *subject to this Declaration*." (Emphasis supplied). And by accepting a deed, each owner, including owners of Quarter Ownership Interests, "covenants, consents and agrees to and with the Declarant . . . to be bound by, observe[,] comply with and perform the covenants, conditions, reservations, restrictions, easements and limitations contained in this Declaration and in the Articles of Incorporation, Bylaws and Rules and Regulations of the [COR Condominium Association]."

The Public Offering Statement, through which the Taxpayer, acting as the developer of COR, offered Quarter Ownership Interests in COR, provides much the same:

> Purchasers of Quarter Ownership Interests are eligible to apply for a membership in the Sea Island Club (the "Membership"). Upon approval for Membership, a Quarter Ownership Interest Owner shall be entitled to privileges of use of the facilities of the Sea Island Club, subject to compliance with the then existing applicable Membership Program and Rules and Regulations of the Sea Island Club (the "Membership

Program") and payment of the then existing dues and other fees or charges of the Sea Island Club. The terms of Membership for the Quarter Ownership Interest Owners are provided for in the membership application for the Sea Island Club (the "Membership Application"), Membership Program, referenced below, and the Declaration.

Further,

> Membership held by a Quarter Ownership Interest Owner as a result of ownership of such Quarter Ownership Interest *shall terminate* at such time as the Quarter Ownership Interest Owner conveys, transfers or otherwise disposes of such Quarter Ownership Interest and is *not transferable* or assignable, and *may not be transferred or assigned in connection with the sale of any real estate*. Provided, however, upon the conveyance, transfer, or assignment of a Quarter Ownership Interest to a new Owner of the Quarter Ownership Interest, the prior Owner's Membership *shall terminate and [the Taxpayer] shall provide the new Owner with the opportunity to apply* for a Quarter Ownership Interest Membership.

(Emphasis supplied.) The Statement also provides that "[t]he terms of Membership for the Quarter Ownership Interest Owners are provided for in the membership application for the Sea Island Club . . . and the Declaration." These governing documents, at a minimum, create an issue of fact at to whether the procedure for obtaining a club membership at COR associated with Quarter Ownership Interests is

"inextricably bound with the sale of qualified real property." *Morton*, 294 Ga. App. at 905 (1).

In its order, the trial court relied on the testimony of the vice president of membership who deposed that membership is "automatically approved with the purchase. I mean, we tell them, the [membership] committee, you know, this unit or this share has been purchased and this is who bought it and this is who will be a member, but it comes with the unit."[5] The court also cited the vice president's affidavit, in which she averred that "[u]pon the sale of a COR unit, the membership is transferred by the current owner to the new owner by a transfer executed at the time of sale. The membership is transferred directly from the current owner to the new owner."

As the trial court itself admits, however, this testimony is at odds with the Declaration and the Public Offering Statement. Furthermore, the vice president also deposed that owners have never been able to sell memberships to another individual; "they always go through Sea Island." On the errata sheet to the deposition, however,

---

[5] This aspect of the vice president's testimony could be seen as consistent with the facts in *Morton*, wherein this Court noted, "Approval for membership is not automatic, but in most instances, the purchaser is approved and receives a membership as a matter of course." *Morton*, 294 Ga. App. at 902.

8

she added, "But membership of COR unit owners do transfer directly to new owners." This inconsistency appears to be a contradiction in the vice president's testimony, which, if not reasonably explained, should be construed against the Taxpayer for the purposes of summary judgment. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986) ("[I]f on motion for summary judgment a party offered self-contradictory testimony on the dispositive issue in the case, and the more favorable portion of his testimony was the only evidence of his right to a verdict in his favor, the trial court must construe the contradictory testimony against him."). There is no evidence in the record that the vice president offered an explanation, reasonable or otherwise, about the contradictory testimony; therefore it must be construed against her.

In sum, the trial court erred by holding as a matter of law that the County was required to exclude the value of Sea Island Club membership rights from the comparable sales price used to value the subject properties. See *Morton*, 294 Ga. App. at 905 (1). The trial court, therefore, erred by granting partial summary judgment in favor of the Taxpayer on this ground.[6]

---

[6] In a footnote, the County contends that, for the same reasons given above, the trial court erred by separately holding that the County was required to exclude from the comparable sales price the value associated with the waiver of the membership

9

2. The County challenges the trial court's ruling that because the Quarter Ownership Interests Owners pay only 25 percent of the annual dues for full club membership, the County was required to "extract[ ] the value of reduced dues from the gross sales price of the comparable sales to determine the [relevant] Properties' fair market value."[7]

This aspect of club membership available to owners of Quarter Ownership Interests is part of, and cannot be separated from, the value of the membership discussed in Division 1. See generally *Morton*, 294 Ga. App. at 904 (1) ("real property" for the purpose of real property taxation is defined as "the bundle of rights, interest and benefits connected with the ownership of real estate"). To hold otherwise would allow the taxpayers to escape taxation on a portion of "the amount a

---

initiation fee for owners of Quarter Ownership Interests at COR. This assertion was not enumerated as error, and "[a] party cannot expand his enumerations of error through argument or citation in his brief." (Citation and punctuation omitted.) *Robertson v. State*, 277 Ga. App. 231, 233 (1), n. 5 (626 SE2d 206) (2006). See also *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999).

[7] Contrary to the assertion of the Taxpayer, the County did not concede during depositions that the value of reduced dues was required to be extracted from the valuation of the COR comparable sales in the event the facts show that the procedure for obtaining a club membership at COR associated with Quarter Ownership Interests is "inextricably bound with the sale of qualified real property." *Morton*, 294 Ga. App. at 905 (1).

knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale. OCGA § 48-5-2 (3)." (Punctuation omitted.) *Morton*, 294 Ga. App. at 907 (1). We therefore conclude that the trial court erred by holding as a matter of law that the County was required to reduce the relevant valuations by this factor.

In sum, the trial court erred by granting partial summary judgment in favor of the Taxpayer on the issues raised in this appeal. We therefore reverse those aspects of the trial court's ruling as explained above.

*Judgment reversed in part. Miller, P. J., and Reese, J., concur.*