**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 5, 2024**

# In the Court of Appeals of Georgia

A23A1344. BARSAMIAN v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1345. LAUGHLIN et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1346. CLARK et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1347. HENAGAN, III v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1348. FEUSS et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1349. MASSEY SI, LLC v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1350. WAGUESPACK AS TRUSTEE OF THE DONALD JAMES WAGUESPACK TRUST v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1351. GREENWALD, III et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1352. BURTON, AS TRUSTEE OF THE 1998 ROBERT E. BURTON FAMILY TRUST v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1353. RHODES et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1354. OCR 22, LLC v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1355. HOLLEY v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1356. BARSAMIAN v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1357. BURTON, TRUSTEE OF THE 1998 ROBERT E. BURTON FAMILY TRUST v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1358. CLARK et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1359. FEUSS et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1360. GREENWALD, III et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1361. HENAGAN, III v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1362. HOLLEY v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1363. MASSEY SI, LLC v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1364. OCR 22, LLC v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1365. RHODES et al. v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

A23A1366. WAGUESPACK v. GLYNN COUNTY BOARD OF TAX ASSESSORS.

GOBEIL, Judge.

In these 23 companion cases, a group of property owners appealed the 2015 and 2017 property tax assessments of their quarter interest units in the Cloister Ocean Residences ("COR") located on Sea Island, contending in pertinent part that the Glynn County Board of Tax Assessors (the "County") improperly included in the appraisal of their real property interests the separate value of their memberships in the Sea Island Club, which the property owners contend is nontaxable intangible personal property. The appeals progressed through the Glynn County Board of Equalization ("BOE") to the Superior Court of Glynn County. In Case Nos. A23A1344 through A23A1355, Bonnie A. Barsamian (A23A1344), John C. Laughlin and Gail H. Laughlin

(A23A1345),[1] Peter S. Clark and Stacy W. Clark (A23A1346), Charles S. Henagan, III (A23A1347), Charles E. Feuss and Linda U. Feuss (A23A1348), Massey SI, LLC (A23A1349), Donald J. Waguespack, as Trustee of the Donald James Waguespack Trust (A23A1350), Taylor C. Greenwald, III and Anne D. Greenwald (A23A1351), Maxine H. Burton, as Trustee of the 1998 Robert E. Burton Family Trust (A23A1352), John P. Rhodes and Lisa T. Rhodes (A23A1353), OCR 22, LLC (A23A1354), and Leigh Pierce Holley (A23A1355) (collectively, the "2017 Taxpayers"), appeal from the superior court's denial of their motion for partial summary judgment and the grant of the County's motion for summary judgment with respect to the County's 2017 valuation of their property interests. In Case Nos. A23A1356 through A23A1366, Bonnie A. Barsamian (A23A1356), Maxine H. Burton, as Trustee of the 1998 Robert E. Burton Family Trust (A23A1357), Peter S. Clark and Stacy W. Clark (A23A1358), Charles E. Feuss and Linda U. Feuss (A23A1359), Taylor C. Greenwald, III and Anne D. Greenwald (A23A1360), Charles S. Henagan, III (A23A1361), Leigh Pierce Holley (A23A1362), Massey SI, LLC (A23A1363), OCR 22, LLC (A23A1364), John P. Rhodes and Lisa T. Rhodes (A23A1365), and Donald

---

[1] The Laughlins did not file an appeal from the 2015 valuation of their property.

4

J. Waguespack, as Trustee of the Donald James Waguespack Trust (A23A1366) (collectively, the "2015 Taxpayers"), appeal from the superior court's denial of their motion for partial summary judgment and the grant of the County's motion for summary judgment with respect to the County's 2015 valuation of their property interests. For the reasons that follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Havenbrook Homes, LLC v. Infinity Real Estate Investments, Inc.*, 356 Ga. App. 477, 478 (847 SE2d 840) (2020) (citations and punctuation omitted).

*Background Facts*

The stated intent of Georgia's tax laws is to tax properties at their fair market value. See OCGA §§ 48-5-1, 48-5-6 ("[a]ll property shall be returned for taxation at its fair market value . . ."). The County is tasked with ensuring "that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate

5

share of taxes." OCGA § 48-5-306 (a). Under OCGA § 48-5-2 (3), the fair market value of a property is defined as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." As a result, "Georgia imposes taxes upon all owners of nonexempt real and tangible personal property at the property's fair market value." *Morton v. Glynn County Bd. of Tax Assessors*, 294 Ga. App. 901, 904 (1) (670 SE2d 528) (2008).

The Georgia Department of Revenue ("DOR") has adopted regulations, compiled as an "Appraisal Procedures Manual" ("APM"), to assist county tax officials in appraising tangible real and personal property for ad valorem tax purposes. Ga. Comp. R. & Regs. r. 560-11-10-.01 (1). The APM defines taxable "real property" as "the bundle of rights, interests, and benefits connected with the ownership of real estate. Real property does not include the intangible benefits associated with the ownership of real estate, such as the goodwill of a going business concern." Ga. Comp. R. & Regs. r. 560-11-10-.02 (1) (x). The APM lists the "sales comparison approach," used by the County in the instant cases, as an appropriate method of appraising real property. Ga. Comp. R. & Regs. r. 560-11-10-.09 (4). The APM directs appraisal staff utilizing this method to estimate value by comparing the property in

question to similar properties that have recently sold. See Ga. Comp. R. & Regs. r. 560-11-10-.09 (4) (b) ("The appraisal staff shall use the following four steps when applying the sales comparison approach: market research and verification, selecting appropriate units of comparison, making reasonable adjustments based on the market, and applying the adjusted comparison units to the subject of the appraisal.").

The Sea Island Club is a private recreational club whose members are given exclusive access to its beach, dining, golf, tennis, spa, and fitness facilities. There are three different categories of membership: full, beach and sports, and invitational. Full membership, which includes access to all facilities and covers greens fees for the golf courses, is only available to owners of real property on Sea Island or within one of its designated communities. All three categories of membership require submission of an application to the Sea Island Company,[2] which must be approved by a membership committee. In 2017, an applicant for a full membership was required to pay a $100,000 deposit, which would be fully refundable in the event the member later terminated his

---

[2] The Sea Island Company is a family-owned hospitality and real estate corporation, which manages the Sea Island Club. See Rogers, Ellen. "*Sea Island Company*." New Georgia Encyclopedia, last modified Jan 27, 2023. https://www.georgiaencyclopedia.org/articles/business-economy/sea-island-company/

or her membership. In addition to the deposit, each full membership holder is required to pay annual dues, which totaled $15,496 in 2017, plus an additional annual member fee of $1,100 for active members who own property on Sea Island. When an individual with a full membership sells his or her Sea Island property, he or she can transfer the membership to one of his or her adult children, retain it for himself or herself, or transfer it back to the Sea Island Company.

Each of the 2015 Taxpayers and the 2017 Taxpayers owns at least one Quarter Ownership Interest[3] of certain condominium units in the COR. Purchasers of Quarter Ownership Interests in the COR also are eligible to apply for and, if approved, acquire full membership in the Sea Island Club with some important differences from a traditional full membership. First, the $100,000 refundable membership deposit is waived. Second, the membership dues owed are a quarter of those owed by a traditional full member, and totaled $4,149 per year in 2017. Nevertheless, owners of each COR quarter interest are permitted to utilize their Sea Island Club memberships

---

[3] The COR permits ownership of quarter shares of an individual condominium unit; such an owner would be authorized to use the condominium for one-quarter of the year.

for the entire year as opposed to just a quarter of the year even though they pay only a quarter of the annual dues.

As relevant here, the Declaration of Condominium for the COR (the "Declaration") expressly provides that memberships held by owners of a quarter interest are not transferable, that COR sales terminate memberships, and that purchasers must then apply anew for club membership:

> Membership in the Sea Island Club held by an Owner of a Quarter Ownership Interest as a result of ownership of such Quarter Ownership Interest or Residence Unit *shall terminate* at such time as the Owner conveys, transfers[,] or otherwise disposes of such Quarter Ownership Interest. Such membership *is not transferable or assignable*. The purchaser from any Owner of a Quarter Ownership Interest may, as determined by Sea Island Company, be provided an opportunity to apply for and, if approved for membership by Sea Island Company, acquire a membership in Sea Island Club, in accordance with the terms of the Sea Island Club Membership Program and Rules and Regulations then in effect.

The Declaration also states that "all Quarter Ownership Interests therein . . . shall be held, sold, conveyed, mortgaged, hypothecated, encumbered, leased, rented, occupied, improved and used subject to this Declaration." And by accepting a deed, each owner, including owners of Quarter Ownership Interests, "covenants, consents

and agrees to and with the Declarant . . . to be bound by, observe[,] comply with and perform the covenants, conditions, reservations, restrictions, easements and limitations contained in this Declaration and in the Articles of Incorporation, Bylaws and Rules and Regulations of the [COR] Condominium Association[.]"

The Public Offering Statement, through which SIA Propco I, LLC ("SIA"), acting as the developer of the COR, offered Quarter Ownership Interests in the COR, similarly provides:

> Purchasers of Quarter Ownership Interests are eligible to apply for a membership in the Sea Island Club (the "Membership"). Upon approval for Membership, a Quarter Ownership Interest Owner shall be entitled to privileges of use of the facilities of the Sea Island Club, subject to compliance with then existing applicable Membership Program and Rules and Regulations of the Sea Island Club (the "Membership Program") and payment of the then existing dues and other fees or charges of the Sea Island Club. The terms of Membership for the Quarter Ownership Interest Owners are provided for in the membership application for the Sea Island Club (the "Membership Application"), Membership Program, referenced below, and the Declaration.

Further,

> Membership held by a Quarter Ownership Interest Owner as a result of ownership of such Quarter Ownership Interest *shall terminate* at such

time as the Quarter Ownership Interest Owner conveys, transfers or otherwise disposes of such Quarter Ownership Interest and *is not transferable or assignable, and may not be transferred or assigned in connection with the sale of any real estate.* Provided, however, upon the conveyance, transfer[,] or assignment of a Quarter Ownership Interest to a new Owner of the Quarter Ownership Interest, the prior Owner's Membership shall terminate and [SIA] shall provide the new Owner with the opportunity to apply for a Quarter Ownership Interest Membership[.]

In the instant appeals, the 2017 Taxpayers and the 2015 Taxpayers assert that membership in the Sea Island Club is directly transferable upon sale of a property owner's interest in the COR, and thus, considered intangible personal property not subject to taxation. However, as discussed in more detail below, based on existing precedent and the COR's governing documents, membership in the Sea Island Club terminates when a Quarter Ownership Interest owner sells his or her interest, and thus, is inextricably bound with the sale of real property. As a result, we conclude that the superior court did not err in concluding that the value of membership in the Sea Island Club may be included in assessing the fair market value of such properties.

*Case Nos. A23A1344 through A23A1355*

11

In these twelve appeals, the County appraised each Quarter Ownership Interest owned by the 2017 Taxpayers a fair market value for 2017 ad valorem purposes, using the sales comparison approach. The 2017 Taxpayers appealed the assessments to the BOE, challenging the constitutionality of the assessment, inaccurate valuation, exemption, lack of equalization, and non-uniformity. After a hearing, the BOE upheld the County's 2017 assessments, and the 2017 Taxpayers then appealed to the superior court.

The County filed a motion for summary judgment, arguing that, based on existing precedent, it was not required to adjust the taxable value of the 2017 Taxpayers' property interests to exclude the value of Sea Island Club Memberships or the value of reduced dues associated with those memberships. The County asserted it was entitled to summary judgment in large part because the transactions in which buyers purchased Quarter Ownership Interests in COR units did not include the purchase and sale or other conveyance of a Sea Island Club Membership. Rather, the transaction "merely granted the purchaser the right to immediate access to a [m]embership, which would be acquired via an entirely separate transaction with the Club itself."

The 2017 Taxpayers in turn filed a motion for partial summary judgment, arguing that the "unreasonableness and arbitrary nature of the assessment process renders the valuation of the [s]ubject [p]arcels invalid as a matter of law." The motion also asserted that the valuation "violates the constitutional and statutory requirements of uniformity and equalization." Specifically, the 2017 Taxpayers argued that the membership rights in the Sea Island Club constituted intangible personal property, which was exempt from taxation, and thus, the appraisals of their property interests should be downwardly adjusted by the value of the membership received at the time of sale.

Following a hearing, in an order dated August 23, 2022, the superior court denied the 2017 Taxpayers' motion for partial summary judgment and granted the County's motion for summary judgment. The court found that the cases were controlled by our holding in *Morton*, concluding that:

> the County did not improperly include the value of the Club membership in its appraisals and could properly include the enhanced value paid to the seller for the right to apply for membership as part of the fair market value of the property. This increased value is a benefit connected to the real property itself, rather than an intangible benefit such as goodwill.

In Case Nos. A23A1344 through A23A1355, the 2017 Taxpayers appeal from the superior court's August 23, 2022 order.

*Case Nos. A23A1356 through A23A1366*

In these eleven appeals, the 2015 Taxpayers appealed the County's 2015 valuation for their property assessments to the BOE raising the grounds of market value, taxability, and uniformity. After a hearing, the BOE found in favor of the 2015 Taxpayers and reduced the 2015 valuation. The County appealed the BOE's decision to the superior court. On October 27, 2020, the County voluntarily dismissed the cases against the 2015 Taxpayers without prejudice.

On April 26, 2021, the County filed a renewal action under OCGA § 9-2-61 (a). As relevant here, the parties filed cross motions for summary judgment. In support of their motion for partial summary judgment, the 2015 Taxpayers argued that the County's 2015 valuations were higher than the fair market value of their property interests because they were based upon sales of comparable Quarter Ownership Interests that included the value of Sea Island Club membership rights as well as the value of interior furnishings. The County countered that it was not required to reduce the value of comparable sales to account for the value of a membership in the Sea

14

Island Club or the value of reduced dues associated with those memberships, because the purchase and sale of quarter ownership interests in COR units did not include the direct transfer of a Sea Island Club Membership.

In an order dated August 24, 2022, the superior court denied the 2015 Taxpayers' motion for partial summary judgment and granted the County's motion for the same reasons as outlined in its August 23, 2022 order with respect to the 2017 Taxpayers. Specifically, the court reiterated "that the County did not improperly include the value of the Club membership in its appraisals and could properly include the enhanced value paid to the seller for the right to apply for membership as part of the fair market value of the property."[4] In Case Nos. A23A1355 through A23A1366, the 2015 Taxpayers appeal from the superior court's August 24, 2022 order.

*Analysis*

In their respective appeals, the 2017 Taxpayers and the 2015 Taxpayers raise the same enumerations of error, arguing that: (1) the superior court erred in granting the County's motion for summary judgment; (2) the superior court erred in denying

---

[4] The superior court granted the 2015 Taxpayers' motion for partial summary judgment with respect to the issue of unit furnishings, noting that the County conceded that the value of these furnishings should have been excluded from the comparable sales used to value the properties in question.

15

the 2017 Taxpayers' and the 2015 Taxpayers' motions for partial summary judgment; and (3) "[a]t a minimum," the superior court failed to recognize that genuine issues of material fact remain thereby precluding the grant of summary judgment to the County. For the sake of clarity and ease of reference, we address the arguments of the 2017 Taxpayers and the 2015 Taxpayers together (and hereafter, collectively referred to as the "Taxpayers").

1. The Taxpayers assert that the superior court improperly granted the County's summary judgment motions because membership in the Sea Island Club is transferred directly to the purchaser at the time of a sale of a Quarter Ownership Interest — thus, the membership rights are intangible personal property that are not subject to ad valorem taxation. In a related claim of error, they maintain that "[a]t a minimum," issues of fact remain as to whether the Sea Island Club Membership was included in the sales of the property interests, and thus, the superior court's grant of summary judgment was improper.

Previously, this Court considered the issue of whether the County was required to downwardly adjust the value of Sea Island Company properties by the value of the

membership. First, in *Morton*,[5] we held that, although a club membership is per se intangible personal property and therefore not taxable real estate, if the applicable procedure for transferring club memberships shows that a purchaser obtains a right to apply for a membership with the club, rather than purchasing a membership directly from the property seller, such a right is inextricably bound with the sale of qualified real property and is, therefore, properly considered when assessing the fair market value of such properties. 294 Ga. App. at 904-905 (1).

> Such properties sell at an enhanced value, not because they include a membership, but because the seller agrees to arrange that the buyer will have preferential eligibility for an available membership. It is this enhanced value, not the value of the membership itself, that is included in the county's appraisals.

Id. at 905 (1). The *Morton* Court thus concluded that "the County could properly include the enhanced value paid to the seller for the right to apply for membership as part of the fair market value of the property. This increased value is a benefit

---

[5] *Morton* involved the interplay between the Sea Island Club Membership and the calculation of property tax values, but was related to different Sea Island properties. 294 Ga. App. at 902.

connected to the real property itself, rather than an intangible benefit such as goodwill."[6] Id.

Then, in *Glynn County Board of Assessors v. SIA Propco I, LLC*, 351 Ga. App. 103 (830 SE2d 403) (2019), SIA, which owned 52 Quarter Ownership Interests in 17 condominium units in COR as of 2015, appealed the County's calculation of each interest's fair market value for 2015 ad valorem tax purposes.[7] Id. at 103. The BOE reduced the valuations to account for the value of membership rights in the Sea Island Club that were included in the sales price of the comparable properties. Id. The

---

[6] In *Morton*, this Court noted that goodwill is not deemed real property for taxation purposes because it is "a favor which the management of a business wins from the public, and as such is more associated with a business operation than the property on which the business is located." 294 Ga. App. at 905 (1) (quoting *Pine Pointe Housing, L. P. v. Lowndes County Bd. of Tax Assessors*, 254 Ga. App. 197, 200 (1) (b) (561 SE2d 860) (2002); punctuation omitted).

[7] It appears that the County appealed the 2015 valuation for SIA and the 2015 Taxpayers to superior court. Those cases were consolidated for discovery purposes. SIA and the County filed cross-motions for summary judgment, and the superior court denied the County's motion for summary judgment and granted in part and denied in part SIA's motion. see *SIA Propco I*, 351 Ga. App. at 103. In *SIA Propco I*, discussed in more detail infra, this Court reversed in part, concluding that the superior court erred by granting partial summary judgment in favor of SIA. Id. at 105-107 (1). SIA is not a party to the instant appeals.

County appealed that decision to the superior court, which found the factual circumstances present in *Morton* to be distinguishable, concluding:

> In *Morton*, the sale of the membership was a separate transaction between the seller and the Club. Here, despite the language in the Public Offering Statement [and] Declaration, the undisputed fact[ ] remains that membership is guaranteed as part of the transaction between buyer and seller.

*SIA Propco I*, 351 Ga. App. at 104-105 (1). In support, the superior court pointed to the deposition testimony of Frankie Strother, Vice President of membership for the Sea Island Club, in which Strother described that Club membership is "automatically approved with the purchase. I mean, we tell them, the [membership] committee, you know, this unit or this share has been purchased and this is who bought it and this is who will be a member, but it comes with the unit." Id. at 106 (1). The court also relied on Strother's affidavit, dated March 15, 2017, in which she stated that "[u]pon the sale of a COR unit, the membership is transferred by the current owner to the new owner by a transfer executed at the time of sale. The membership is transferred directly from the current owner to the new owner." Id. at 106-107 (1). The superior court in turn held, as a matter of law, that the County was required to exclude the

value of Sea Island Club membership rights from the comparable sales price used to value the subject properties otherwise the County "would be impermissibly taxing the membership transaction and in turn, the value of sales concessions and intangible rights included with the sale." Id. at 107 (1). The County then appealed to this Court.

In our opinion in *SIA Propco I*, we found that Strother's testimony — that membership in the Sea Island Club automatically transferred with the sale of an ownership interest — was in direct conflict with the Declaration of Condominium for the COR and the COR Public Offering Statement issued prior to the sale of Quarter Ownership Interests, which each outlined that quarter-interest purchasers are entitled only to an opportunity to apply for membership. 351 Ga. App. at 107 (1). Furthermore, Strother deposed that owners have never been able to sell memberships to another individual; "[t]hey always go through Sea Island." In an errata sheet, Strother clarified her response and stated: "But membership of COR unit owners do transfer directly to new owners." We noted that the contradiction in Strother's testimony should, absent a reasonable explanation, be construed against SIA for the purposes of summary judgment. Id. at 107 (1); see *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986) ("[I]f on motion for summary judgment a party

offered self-contradictory testimony on the dispositive issue in the case, and the more favorable portion of his testimony was the only evidence of this right to a verdict in his favor, the trial court must construe the contradictory testimony against him."). Because there was no evidence in the record that Strother offered an explanation about her seemingly contradictory testimony, we concluded that it must be construed against her. *SIA Propco I, LLC*, 351 Ga. App. at 107 (1). And because this was the only evidence offered by SIA in support of its position — that the County was required to exclude the value of Sea Island Club membership rights from the comparable sales price used to value the subject properties — we reversed the superior court's grant of partial summary judgment in favor of SIA on this ground because an issue of fact remained.[8] Id.

In the instant appeals, the Taxpayers continue to assert, as a matter of law, that membership rights in the Sea Island Club should have been excluded from the valuation of their property interests — contending that the membership rights were

---

[8] We highlighted that the COR's "governing documents, at a minimum, create an issue of fact as to whether the procedure for obtaining a club membership at COR associated with Quarter Ownership Interests is inextricably bound with the sale of qualified real property." *SIA Propco I*, 351 Ga. App. at 106 (1) (citation and punctuation omitted).

conveyed directly from unit sellers to purchasers as part of the same transaction as the purchase and sale of a Quarter Ownership Interest, as evidenced by Strother's testimony and the unit purchase agreements. In an attempt to distinguish *Morton*, the Taxpayers argue that, while the properties at issue in *Morton* included only the *right* to apply for a Sea Island Club Membership (which was enhanced value inextricably linked with the properties and thus properly considered for taxation purposes), their interests included the *actual* Sea Island Club memberships, which constitute intangible personal property and thus, should not be subject to taxation. They further argue that Strother's testimony does not contradict the governing documents for COR, and in any event, she provided a reasonable explanation for any alleged contradiction in her errata sheet and subsequently-filed affidavit (dated September 9, 2021) so the *Prophecy* rule (which we enforced in *SIA Propco*) has no application here. Finally, they also maintain that while the Club memberships were directly transferred in the sales of the property interests, these memberships are still considered separate for the purposes of calculating ad valorem taxation because: (1) use of memberships does not take place on the subject parcels, and (2) the memberships are more closely associated with the Sea Island Club's business operation than the subject parcels.

As noted above, the Declaration and the Public Offering Statement both outline that the purchase of a COR Quarter Ownership Interest includes the right to apply for membership in the Sea Island Club, but not the actual membership itself. Importantly, when an owner sells his or her interest in the property, he or she does not have the ability to directly transfer the actual membership to the purchaser of the property interest. Rather at the time of the sale, the seller would have to relinquish membership, which could then be reissued by the Sea Island Company to the purchaser. Notably, even if a seller intended to transfer the membership to the purchaser, the purchaser would still have to submit an application to the Sea Island Company and await approval before becoming a member. Even if the approval of the purchaser for membership was a mere formality, the issuance of the membership was from the Sea Island Company to the purchaser; not directly from the seller to the purchaser.

To support their argument that the Sea Island Club memberships should be excluded from the calculation of ad valorem taxes (because the memberships are transferred from the current owner to the new owner directly at the time of sale), the Taxpayers point to the COR Quarter Ownership Interest Purchase Agreement. They

23

highlight section 37 of the purchase agreement, which provides as follows: "Purchaser acknowledges that as an Owner of a Quarter Ownership Interest in a Residence Unit within the Condominium, that Seller agrees to provide to Purchaser . . . a non-equity, non-refundable membership in the Sea Island Club." In the first instance, the executed purchase agreement in the record is between SIA and homeowners who are not parties to the current appeal, and thus, it is unclear whether the document is the same as the purchase agreement signed by the Taxpayers, or even relevant to the instant appeals. In any event, the Taxpayers fail to acknowledge the full text of section 37 of the purchase agreement in the record, which continues:

> The Sea Island Club membership is not separable from the Quarter Ownership Interest and is appurtenant thereto. Membership in the Sea Island Club held by an Owner of a Quarter Ownership Interest as a result of ownership thereof shall terminate at such time as the Owner of such Quarter Ownership Interest conveys, transfers[,] or otherwise disposes of such Quarter Ownership Interest.

As a result, the language in the purchase agreement, assuming it is properly before us in the instant appeals, mirrors that found in the Declaration and the Public Offering Statement whereby an owner's membership in the Sea Island Club terminates when

he or she conveys his or her interest in the property, and thus, cannot be directly transferred to the purchaser.

Next, the Taxpayers rely on Strother's deposition, errata sheet, and affidavits,[9] in which she represented that when a buyer purchases a quarter interest in the COR, membership in the Sea Island Club is directly transferred by the current owner to the new owner by a transfer executed at the time of sale. Here, the superior court pretermitted the application of *Prophecy* to Strother's testimony. Instead, the court highlighted that the record shows that Strother's testimony regarding the transfer of a Sea Island Club Membership is in direct conflict with the language contained in COR's governing documents.

---

[9] *SIA Propco I* involved Strother's deposition (taken on July 19, 2017), errata sheet, and affidavit, dated March 15, 2017. In 2021, Strother filed a second affidavit, dated September 9, 2021. Although Strother's 2017 and 2021 affidavits contain similar language, the 2021 affidavit contains additional statements that appear to be her attempt to provide an explanation of alleged inconsistences in her testimony to avoid application of the *Prophecy* rule. For example, Strother states that in her deposition, she was asked: "Have Sea Island memberships ever been transferable from like -- has an owner ever been able to sell his membership to another individual?" Strother responded "No." In her 2021 affidavit, she explained that she "understood the question from the County's attorney to be focused on memberships other than memberships associated with the COR units."

Condominium instruments, which include the declaration of condominium, are analogous to an "express contract" between the unit owners/members and the condominium association. These instruments are strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning.

*Quality Foods, Inc. v. Smithberg*, 288 Ga. App. 47, 50 (1) (653 SE2d 486) (2007) (citation and punctuation omitted).

Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract. Parol evidence is only admissible when any ambiguity cannot be resolved through the application of the rules of contract construction and when such unresolved ambiguity must be resolved by a jury as a matter of disputed fact. The existence or nonexistence of ambiguity in a contract is a question of law for the court.

*UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007) (citations and punctuation omitted).

Based on the clear, simple, and unambiguous language of the Declaration and the Public Offering Statement, purchasers of a Quarter Ownership Interest are afforded the right to apply for a Sea Island Club Membership, but not the direct

transfer of the membership itself during the sale. As a result, Strother's deposition and affidavit — in which she represents that Club membership of COR unit owners transfers directly to new owners — is in conflict with the terms of the condominium documents. And parol evidence is never admissible "to add to, take from, or vary a written contract." OCGA § 13-2-2 (1).

The Taxpayers counter that Strother's testimony is not in conflict with the governing documents because the terms of these documents are subject to "then existing applicable rules and regulations of the Sea Island Club." They maintain that Strother, as Vice President of Membership for the Sea Island Club, "is certainly qualified to explain Sea Island Club's existing rules," and thus, her testimony does not contradict the COR governing documents; rather, it provides "clarity" on the Club's then-existing rules and regulations with regards to its membership. In the first instance, the Taxpayers did not raise this precise argument in the superior court. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("Routinely, this Court refuses to review issues not raised in the trial court. . . . Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.") (footnotes omitted). In any event, the Taxpayers have failed to point

to where in the record Strother references the written rules and regulations of the Sea Island Club to support her contention that club memberships are directly transferred from seller to buyer during the sale of the property interest. Rather, Strother attempts to alter the plain terms of the governing documents by opining that purchasers are offered club memberships as a matter of course, and the application process is a mere formality. See *Burns v. Reves*, 217 Ga. App. 316, 317-318 (1) (457 SE2d 178) (1995) (parties are not "authorized to make an unambiguous contract ambiguous by the introduction of parol evidence") (citation and punctuation omitted).

Because there is no ambiguity in the Declaration and Public Offering Statement insofar as to the right to *access* to club memberships, the rules of construction could not be employed to insert a right to guaranteed membership where none existed. See *Gill v. B & R Intl.*, 234 Ga. App. 528, 530 (1) (a) (507 SE2d 477) (1998) ("[W]here the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent."). And absent Strother's testimony, the Taxpayers have failed to create a genuine issue of material fact to show that the purchase of a COR Quarter Ownership Interest includes a Sea Island Club Membership, as opposed to the mere right to access membership. See *Golden Peanut Co. v. Hunt*, 203 Ga. App.

469, 470-471 (2) (416 SE2d 896) (1992) (parol evidence that trade usage defined "bona fide offer" in peanut contract to mean offer from federally registered peanut handler was barred under parol evidence rule, where evidence did not merely explain or supplement plain, unambiguous contract for sale of peanuts but rather contradicted clear language of agreement and sought to place additional terms and conditions on parties); *Marvel Enterprises, Inc. v. World Wrestling Federation Entertainment, Inc.*, 271 Ga. App. 607, 612-613 (3) (610 SE2d 583) (2005) (parol evidence was unnecessary and inadmissible to construe merchandise licensing agreement between toy company and professional wrestling company with regards to agreement provision that allowed list of licensed elements to be amended, where the agreement itself unambiguously defined the terms and stated that wrestling company reserved the right to amend the list of licensed elements from time to time to keep the list current with its licensing rights). Accordingly, the superior court did not err in granting the County's motions for summary judgment as to these claims.

2. The Taxpayers also assert that the superior court erred in denying their respective motions for partial summary judgment because the County failed to adjust the appraisal of their property interests, as required under the applicable tax rules and

regulations, to account for intangible personal property, including the waiver of the initiation fee and reduced dues for a Sea Island Club Membership, and thus the County's valuation does not represent the fair market value of the subject properties.

We addressed the issue of excluding the value of the reduced dues in *SIA Propco I*, 351 Ga. App. at 108 (2). Specifically, we explained that this aspect of club membership available to owners of Quarter Ownership Interests "is part of, and cannot be separated from, the value of the membership discussed in Division 1." Id. See generally *Morton*, 294 Ga. App. at 904 (1) ("real property" for the purpose of real property taxation is defined as "the bundle of rights, interest and benefits connected with the ownership of real estate") (citation and punctuation omitted). We find that reasoning persuasive in the instant appeals, and thus, conclude that the County was not required to account for the value of the waiver of the initiation fee or reduced membership dues for the Sea Island Club in assessing the fair market value of the Taxpayers' subject parcels.

*Judgments affirmed in Case Nos. A23A1344 through A23A1366. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*

30